No. 14-50095

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,           )
                                    )
    Plaintiff-Appellee,             )
                                    )
    v.                              )
                                    )
MICHAEL JOSEPH PEPE,                )
                                    )
    Defendant-Appellant.            )
_____)

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUN 0 5 2017

FILED _____ ____
DOCKETED _____ ____
                DATE       INITIAL

---

**RONALD BOYAJIAN'S MOTION TO INTERVENE;
DECLARATION OF RONALD BOYAJAIN**

---

On Appeal from the United States District Court
for the Central District of California

The Honorable Dale S. Fischer, Presiding
No. CR-07-00168-DSF

Ronald G. Boyajian

Register # 33900-112,
U.S. Penitentiary Tucson
P.O. Box 24550
Tucson, AZ 85734

Proposed Intervenor,
In Pro Per

# TABLE OF CONTENTS

Motion to intervene ............................................................... 1

Introduction ...................................................................... 1

A. Ronald Boyajian's Liberty And Economic Interests
And The Parties Inadequate Presentation And Waivers ...................... 1

B. Foreign Commerce Power Is Not More Broad
Than The Interstate Power .................................................... 4

C. The Court Can Conduct A Full De Novo Review Of The
Constitutionality Question At Issue, Clarify Or Resolve
The Proper Scope Of Congress's Foreign Commerce Power,
And Refine And Distinguish From *Clark* ...................................... 5

D. Proper View Of The Comparative Breadth Of Congress'
Foreign Commerce Power Converts The Constitutionality
Question Into An Issue Of First Impression In This Circuit ..................... 8

E. The Court Should Not Look At Congress' Extension
Of The Commerce Power In A Vacuum ...................................... 8

Argument ........................................................................ 12

I.   MR. BOYAJIAN IS ENTITLED TO INTERVENE AS OF RIGHT
PURSUANT TO RULE 24(a) .................................................. 14

A. Mr. Boyajian's motion is timely .......................................... 14

B. Mr. Boyajian Has A Significant Protectable Interest
In The Outcome Of This Appeal ........................................... 15

C. The Disposition Of This Action May Impair
Mr. Boyajian's Ability To Protect His Interests ........................... 17

D. Absent Intervention, Mr. Boyajian's Interests
Will Not Be Adequately Represented ...................................... 17

II.     IN THE ALTERNATIVE, MR. BOYAJIAN SHOULD BE GRANTED
        PERMISSIVE INTERVENTION PURSUANT TO RULE 24(b) .......... 19

Conclusion ................................................................................... 20

Declaration of Ronald Boyajian ........................................................ 21

Notice of Consent or Objection by the Existing Parties ....................….......... 22

Certificate of Compliance ................................................................ 23

Proof of Service ........................................................................... 24

Exhibit

    Justice Thomas dissent *Baston v. U.S.* 580 U.S. __ (2017) .......................…... 25

# TABLE OF AUTHORITIES

**DESCRIPTION**                                   **PAGE(S)**

## Cases

*Arakaki v. Cayetano*
    324 F.3d 1078, 1083 (9th Cir. 2003) ……………………………………………

*Atonio v. Wards Cove Packing Co., Inc.,*
    810 F.2d 1477, 1478-79 (9th Cir.1987) (en banc) ……………………………..

*Automobile Workers v. Scofield*
    382 U.S. 205, 217 n.10 (1965) ……………………………………………

*Bates v. Jones*
    127 F.3d 870, 873 (9th Cir. 1997) …………………………………………….

*Baston v. United States*
    580 U. S. ____ (2017) [*Thomas dissent in]* cert denied, decided 3/6/17 ………..

*California Credit Union League v. City of Anaheim*
    190 F.3d 997, 998-99 (9th Cir.1990) ………………………………………

*Citizens for Balanced Use v. Montana Wilderness Ass'n*
    647 F.3d 893, 898 (9th Cir. 2011) ………………………………………

*Commercial Realty Projects*
    309 F.3d at 1120 ………………………………………………………

*Daimler Ag v. Bauman*
    134 S. Ct. 746 (2014) ....................................................................................

*Day v. Apoliona*
    505 F.3d 963, 965 (9th Cir. 2007) …………………………………………..

*Dilks v. Aloha Airlines*

iv

642 F.2d 1155, 1157 (9th Cir. 1981) ...............................................

*Donnelly v. Glickman*

    159 F.3d 405 (9th Cir. 1998) ...............................................

*F. Hoffmann-La Roche Ltd. v. Empagran*

    542 U.S. 155 (2004) .........................................................................

*Freedom from Religion Found., Inc. v. Geithner*

    644 F.3d 836, 843 (9th Cir. 2011) ...............................................

*Gonzalez v Raich*

    *125 S. Ct. 2195 (2005)..............................................*

*In re Estate of Ferdinand E. Marcos Human Rights Litig.*

    536 F.3d 980, 986-87 (9th Cir. 2008) ...............................................

*Katzenbach v. McClung*

    379 U.S. 294, 303-04 (1964) .................................................................

*Kinsella v. Kreuger*

    351 U.S. 470 (1956) .............................................................................

*Kiobel v. Royal Dutch Petroleum Co.*

    133 S. Ct. 1659 (2013) .......................................................................

*Leeson v. Transamerica Disability Income Plan*

    671 F.3d 969, 979 (9th Cir. 2012) ...............................................

*Miller v. Gammie*

    335 F.3d 889, 900 (9th Cir. 2003) (en banc) .......................................

*Morrison v. National Australia Bank*

    561 U.S. 247 (2010) ...............................................

*Newman-Green, Inc. v. Alfonzo-Larrain*

    490 U.S. 826, 834 (1989) .................................................................

*OBB PERSONENVERKEHR AG v. Sachs*

  136 S. Ct. 390 (2015) …………………………………………………………..

*RJR Nabisco, Inc. v. European Community*

  136 S. Ct. 2090 (2016) ……………………………………………………….

*Smith v. Los Angeles Unified Sch. Dist.*

  830 F.3d 843, 862 (9th Cir. 2016) ……………………………………………

*Smith* v. *Pangilinan*

  651 F.2d 1320, 1325 (9th Cir. 1981) ………………………………………….

*Southern California Edison Co. v. Lynch*

  307 F.3d 794 (9th Cir. 2002) ………………………………………………….

*Stringfellow v. Concerned Neighbors in Action*

  480 U.S. 370 (1987) …………………………………………………………..

*Trbovich v. United Mine Workers of Am.*

  404 U.S. 528, 538 n.10 (1972) ………………………………………………..

*United States v. Abramov*

  No. 16-50104 (9th Cir.)………………………………………………………..

*United States v. Oregon*

  913 F.2d 576, 589 (9th Cir. 1990)

*United States v. City of Chicago*

  870 F.2d 1256, 1263 (7th Cir. 1989) …………………………………………

*United States v. Palmer*

  16 U.S. (3 Wheat.) 610 (1818)

*United States v. Stringfellow*

  783 F.2d 821, 826 (9th Cir. 1986) ……………………………………………

*United States v. Alisal Water Corp.*

  370 F.3d 915, 919 (9th Cir. 2004) ……………………………………………

*United States v. City of Los Angeles*

    288 F.3d 391, 397 (9th Circ. 2002) ……………………………………………….

*United States v. Clark*

    435 F.3d 1100 (9th Cir. 2006) …………………………………………………..

*United States ex rel. McGough v. Covington Techs. Co.*

    967 F.2d 1391, 1396 (9th Cir. 1992) …………………………………………..

*United States v. Olano*

    507 U.S. 725, 730-36 (1993) ……………………………………………………

*United States v. Peeters*

    No. 16-50471 (9th Cir.)…………………………………………………………….

*United States v. Pendleton*

    658 F.3d 299 (3d Cir. 2011) …………………………………………………..

*United States v. Pepe*

    No. 14-50095 (9th Cir.)…………..………………………………………………..

*United States v. Perez*

    116 F.3d 840, 845-846 (9th Cir. 1997) (en banc) …………………………………

*United States v. Pre Con Industries, Inc.*

    720 F. 3d 1174 (9th Cir. 2013) …………………………………………………

*United States v. Reczko*

    No. 15-50247 (9th Cir.)……..……………………………………………………..

*United States v. Sporich*

    No. 15-50433 (9th Cir.)……………………………………………………………

*United States v. State of Oregon*

    839 F.2d 635, 638 (9th Cir. 1988) ………………………………………………

## **Constitution**

U.S. CONSTITUTION, Amendment V .......................................................... *passim*

U.S. CONSTITUTION, Amendment VI .......................................................... *passim*

## **Statutes**

18 U.S.C. § 2423(c) ..............................................................................passim

Protect Act ................................................................................10,11,19,20

## **Rules**

Fed. R. Civ. P. 1 ..............................................................................

Fed. R. Civ. P. 21 ..............................................................................

Fed. R. Civ. P. 24(a) and 24(b) ..................................................... passim

Fed. R. App. P. Rule 27 ..............................................................................

Fed. R. App. P. Rule 28(j) ..............................................................................

9th Cir. R. 27-1..............................................................................

## MOTION TO INTERVENE

Ronald Boyajian respectfully moves to intervene in this appeal through the present motion. Mr. Boyajian moves for intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure[1]; or, alternatively, for permissive intervention under Rule 24(b). If intervention is granted, Mr. Boyajian requests permission to file a Brief setting out the instant issue(s) in depth and in context. This Motion comports with the provisions of Fed. R. App. P. Rule 27 and 9th Cir. R. 27-1. Mr. Boyajian has obtained Mr. Michael Pepe's consent to his intervention, however, Mr. Boyajian is not in a position to expeditiously obtain the parties' counsel's positions either objecting or consenting to his motion to intervene because he is in custody in federal prison.[2]

Introduction

The undersigned, Ronald Boyajian, seeks limited intervenor status in order to provide the court with relevant argument and authority focusing on enabling the court to address the constitutionality of the same statute at issue this appeal [§ 2423(c)] which strongly implicates his liberty and economic interests.

A.    Ronald Boyajian's Liberty And Economic Interest And The Parties Inadequate Presentation And Waivers

---

[1] This Court generally applies the standards set forth in Federal Rule of Civil Procedure 24 when considering motions to intervene on appeal.

[2] See attached Declaration of Ronald Boyajian, and Notice of Consent or Objection by the Existing Parties.

Ronald Boyajian, age 56 years, is the appellant-defendant in case file no. 16-50327 involving a jury conviction under 18 U.S.C. 2423(c) for which the district court issued orders for permanent imprisonment (70 years) and for payment $50,000 in restitution. Mr. Boyajian recently learned of a creditable basis that his protectable interests -- his liberty and financial solvency -- are threatened by an apparent inadequacy of the presentation in the litigation in this appeal.[3] On top of presenting flawed and incomplete legal argument, both parties—the appellee government and appellant Pepe (through counsel)—have repeatedly and consistently conceded to the holding in *United States v. Clark, 435 F.3d 1100, 1102 (9th Cir. 2006)* finding § 2423(c) constitutional as fully controls, entirely occupies the scope of the constitutionality issue, and precedential such that *Clark* precludes this court from reaching the constitutionality of §2423(c).[4] Critically the

---

[3] The inadequate presentation stems from Pepe's prejudicial concession that Congress's foreign commerce power is arguably more broad than its power to regulate interstate commerce (AOB 59-61). Key to this intervention motion, is the fact that Pepe NEVER returns to offer and present any counterpoint to that overbreadth of scope. Moreover, Pepe's appointed counsel, the Office of the Federal Defender, has declined his client's request to make that argument under the available provisions of FRAP Rule 28(j) supplemental briefing to alert the court of Justice Thomas' directly on point just-issued explication in *Baston*.

[4] "We realize that's a matter for a en banc panel, Supreme Court, for another day." [Pepe, oral argument], and Judge Nguyen "do we need to reach the Foreign Commerce Clause question…" (Pepe "I don't think you do…"), and Judge Kleinfeld's rhetorical inquiry over universal policing "It just seems routine. And it seems like it's straight down the middle of the sort of regulation of commerce with foreign nations by Americans that the Constitution empowered Congress to do. And it looks like just what Clark was directing its attention to. I just don't

Appellate Commissioner adopted the parties reasoning and stance asserted that the constitutionality of §2423(c) could not be reached by Mr. Boyajian's future merits panel on direct appeal. The Commissioner further pointed out Pepe's appeal might dispose of Mr. Boyajian's future appellate claims.[5]

Mr. Boyajian moves to intervene in order to provide the court relevant argument and authority the court may find dispositive of the invalidity of 2423(c), but that in any event so that the court can refine and distinguish from *Clark*.

First, both parties present a flawed premise as foundational to their addressing the constitutionality issue. Contrary to the parties' assertions, entirely unsupported by any Surpeme Court holding, is that the power of Congress to regulate foreign commerce is more broad than its power to regulate interstate commerce. If permitted, Mr. Boyajian would present that, a contrary relationship holds--their comparative breadth being the foreign commerce power is less broad than or in any event NOT MORE BROAD than Congress' interstate power. Second, Mr. Boyajian would offer that whereas the existing parties acknowledged only a very delimited scope to the constitutionality inquiry in fact *the court should not look at the commerce power in a vacuum*. The following sections introduce

---

understand what the problem is really." with no on point rebuttal. [See audio recording of oral argument dated 2/8/17]
[5] (see, e.g. audio record of Mr. Boyajian's testimony before the Appellate Commissioner held March 6, 2017).

concepts the court should be informed about through briefing.

B. <u>Foreign Commerce Power Is Not More Broad Than The Interstate Power</u>

The parties agree that Congress invoked the Foreign Commerce power to enact the statute at issue criminalizing extraterritorial conduct occurring wholly within another foreign sovereign. Whatever this court construes its role as to the constitutionality challenge issue, it should rule from a carefully and independently reached legal premise. Fortunately, the court can avail itself of an assist from Justice Thomas. Mr. Boyajian incorporates as if set forth in full here Justice Thomas' dissent from denial of certiorari in an analogous extraterritorial prosecution of sexual exploitation conduct in *Baston v United States*, 580 U.S. ___(2017), attached. One month after this case was submitted Justice Thomas spoke out directly on point:

> I am concerned that language in some of this Court's precedents has led the courts of appeals into error. **... the time has come for us to clarify the scope of Congress' power under the Foreign Commerce Clause to regulate extraterritorially. ...** But rather than interpreting the Foreign Commerce Clause as it was originally understood, the courts of appeals have taken this Court's modern interstate commerce doctrine and assumed that the foreign commerce power is at least as broad. **The result is a doctrine justified neither by our precedents nor by the original understanding**. ... Taken to the limits of its logic, the consequences of the Court of Appeals' reasoning are startling. ... **whatever the correct interpretation of the foreign commerce power may be, it does not confer upon Congress a virtually plenary power over global economic activity.**

Justice Clarence Thomas, March 6, 2017, *Baston, Id. (emphasis added)*

If credited by the court, Justice Thomas' explication which undercuts the theory of *Clark*, provides basis for caution over the existing parties asserting Congress's foreign commerce power is *more broad* that its power to regulate interstate commerce <u>and</u> waiving this panel's authority[6] to even consider the comparative breadth of Congress's Foreign Commerce Power.

C.  <u>The Court Can Conduct A Full De Novo Review Of The Constitutionality Question At Issue, Clarify Or Resolve The Proper Scope Of Congress's Foreign Commerce Power, And Refine And Distinguish From *Clark*.</u>

This court can rely on and distinguish from the approach in *Clark*[7],

which will have a direct impact in Mr. Boyajian's and others' cases. *Clark*

---

[6] The appellee [the government] argues <u>de novo</u> review is mandatory, and should be informed by the holding in Clark with which the party wholly agrees however the appellee appears to remain silent over the actual scope of the court's authority in conducting that review.

[7] This circuit has a history tolerating the evolution of divergent lines of cases even intra-circuit splits, but if not there is always available to it en banc review. See, e.g., *U.S. v. Pre Con Industries, Inc.*, 720 F.3d 1174 (9th Cir. 2013), "Ordinarily, intra-circuit splits may only be resolved by an en banc panel. *Atonio v. Wards Cove Packing Co., Inc.,* 810 F.2d 1477, 1478-79 (9th Cir.1987) (en banc). **But when intervening higher authority has "undercut the theory or reasoning underlying [] prior circuit precedent in such a way that the cases are clearly irreconcilable,"** *Miller v. Gammie,* 335 F.3d 889, 900 (9th Cir.2003) (en banc), a three judge panel may overrule one line of cases in the split, *see, e.g., Leeson v. Transamerica Disability Income Plan,* 671 F.3d 969, 979 (9th Cir.2012) (overruling Ninth Circuit cases holding "participant status" was a jurisdictional limitation on ERISA claims because those cases were "clearly irreconcilable" with intervening higher authority). *Celanese Coatings* is clearly irreconcilable with intervening Supreme Court authority on jurisdictional requirements." [**bold** emphasis added]

though it proceeded *ab initio* from an incorrect understanding of the breadth of Congress's foreign commerce power nevertheless produced jurisprudence valuable to the disposition of this appeal. First, *Clark* admits that § 2423(c) cannot be made to comport within the Supreme Court's tri-framework for analytics over Commerce Powers (*Morrison*[8]/*Lopez*[9]), "feel[s] like jamming a square peg into a round hole." and "forcing foreign commerce cases into the domestic commerce rubric is a bit like one of the stepsisters trying to don Cinderella's glass slipper;" *Clark, Id.* It is salient point for this court that *Clark's* departure from the only Surpeme Court authorized metric, the tri-framework's "substantial effects test" ["Instead of slavishly marching down the path of grafting the interstate commerce framework onto foreign commerce"] essentially admits § 2423(c) cannot withstand scrutiny under the Supreme Court's requirement of demonstrating substantial effects of foreign commerce. Thus, the court can rely on these findings in *Clark*, combined with clarifying the proper scope of Congress foreign commerce power to refine and or distinguish *Clark*.

Under no circumstances ought the court utilize *Clark's* eccentric "rational basis" test for which a panel of three appellate judges in the Third Circuit in *United*

---

[8] *United States v. Morrison*, 529 U.S. 598 (2000).
[9] *United States v. Lopez*, 514 U.S. 549, 558-59 (1995).

*States v Pendleton*[10] have discredited *Clark* as unreliable:

> In the absence of Supreme Court precedent on the issue, the Court of Appeals for the Ninth Circuit determined that the *Lopez* framework—which developed to "reconcile[] . . . the conflicting claims of state and national power"—has little analytical value in the Foreign Commerce Clause context. *Clark*, 435 F.3d at 1118. Rather than applying *Lope*'s three-part framework to determine whether a statute has a "constitutionally tenable nexus with foreign commerce," the Ninth Circuit proposed a "global, commonsense approach," which considers "whether the statute bears a rational relationship to Congress's authority under the Foreign Commerce Clause."[5] *Id.*

> *Footnote 5* -- The Ninth Circuit in Clark claims to borrow this "rational basis" test from the Supreme Court's holding in *Gonzales v. Raich*. See 545 U.S. at 5 (holding that Congress had a "rational basis" for believing that intrastate possession and manufacture of marijuana had a substantial effect on interstate commerce). As the dissent in Clark rightly notes, however, the "rational basis" analysis in *Raich* went to Congress's "substantial effects" determination. The Supreme Court has articulated several factors to be weighed in determining whether an activity "substantially affects" interstate commerce: (1) whether the regulated activity is economic in nature; (2) whether the statute contains an "express jurisdictional element" linking its scope in some way to interstate commerce; (3) whether Congress made express findings regarding the effects of the regulated activity on interstate commerce; and (4) attenuation of the link between the regulated activity and interstate commerce. See *Morrison*, 529 U.S. at 611-12.

> The "rational basis" standard articulated by the Ninth Circuit in Clark does not consider any of these factors. Rather, its open-ended inquiry

---

[10] *U.S. v. Pendleton*, 658 F.3d 299 (3d Cir. 2011). On November 25, 2005, Thomas Pendleton boarded a plane in New York City and flew to Hamburg, Germany. Six months after his arrival in Germany, Pendleton sexually molested a fifteen-year-old boy.

seems to borrow more heavily from the Supreme Court's pre-Lopez jurisprudence, which held that a court's "investigation . . . end[s]" once it determines that "legislators . . . have a rational basis for finding a chosen regulatory scheme necessary to the protection of commerce." *Katzenbach v. McClung*, 379 U.S. 294, 303-04 (1964).

*Pendleton, Id.*

D. Proper View Of The Comparative Breadth Of Congress' Foreign Commerce Power Converts The Constitutionality Question Into An Issue Of First Impression In This Circuit.

There is no circuit guidance directing and or informing the court how it could utilize the substantial effects test to scrutinize if, how, and to what extent the statute's proscribed private sexual conduct and or relationships on foreign soil substantially impacts this nation's foreign commerce. And the record in this appeal contains no empirical data relevant to conducting such an inquiry. If the court is persuaded of the need to engage in an evidence-based application of the Supreme Court's substantial effects test, it will require expansion of the record.

E. The Court Should Not Look At Congress' Extension Of The Commerce Power In A Vacuum

The traditional boundary of the foreign commerce clause was clear --

*no American would ever be tried for offences occurring outside our border*

**"because the jurisdiction of a nation extends to its citizens, wheresoever they**

8

may be, except within the territory of a foreign sovereign.(fn.d.)" [11] *United States v. Palmer* 16 U.S. (3 Wheat.) 610 (1818) [**bold** *emphasis added*]. In repeated cases the Supreme Court viewed trying Americans for conduct occurring wholly abroad as untenable. Notably, the crimes accused in *Palmer*, *Id*., were crimes of extraordinary economic magnitude yet nowhere did the Surpeme Court countenance federal prosecution for these vast economic crimes as somehow justifiable of federal jurisdiction under the foreign commerce powers. It was unthinkable then and should remain so as Justice Thomas poignantly urges, *Baston, Id*.

This court too should look rather at expansion of the commerce power *against* the ability to call in from abroad critical defense witnesses in one's favor in order to vindicate the Fifth and Sixth Amendment rights, Due Process, and Compulsory Process. The Supreme Court was always concerned over the absence of enforceable protections under the Fifth and Sixth Amendment rights to due process, compulsory process, right to present a defense, etc. -- "The expense of transporting [foreign] witnesses would be considerable for the Government, and probably **impossible for a defendant, whose successful defense may depend on the demeanor of one witness**." see *Kinsella v. Kreuger*, 351 U.S. 470 (1956) [**bold** *emphasis added*]. It is a fact that the legislative history of Congress shows

---

[11] fn. d. 2 Rutherfords's Inst. 180. Vattel, L. 2 ch. 6.

that when enacting the Prosecutorial Remedies and Other Tools To End the

Exploitation of Children Today Act of 2003[12] (PROTECT Act) it never considered

the feasibility of securing critical defense witnesses favorable to the defendant

when invoking the foreign commerce power. This is the same Foreign Commerce

power that existed at the formation of the federal government, and yet the Supreme

Court nearer that time, made clear it lends Congress no free pass to override

Constitutional defense rights:

> It has been suggested that bringing American citizens to this country
> for trial for offenses committed abroad may be a preferable solution
> even if it is not required by the Constitution. Congress might well
> have concluded that this suggestion was completely impractical.
> First, a condition precedent to trial in this country would be the
> consent of the foreign nation concerned in each individual case. This
> consent could always be withheld, and it is likely that foreign
> nations would refuse to cede jurisdiction over serious offenses when
> trial might be held many thousands of miles away. Even where
> jurisdiction was obtained, the deterrent effect of such prosecutions
> might well be vitiated by the distance and delay involved. Secondly,
> both the Government and the accused would face **serious problems
> in the production of witnesses**. Depositions for the Government
> are not permitted in criminal cases. *See* Rule 15, Federal Rules of
> Criminal Procedure. **Attendance of foreign witnesses could be
> only on a voluntary basis, and the testimony of no foreign
> witness could be compelled if the witness or his government
> refused. The expense of transporting witnesses would be
> considerable for the Government, and probably impossible for
> a defendant, whose successful defense may depend on the**

---

[12] Pub. L. No. 108-21, 117 Stat. 650 (codified as amended in scattered sections of 18, 21, 28, and 42 U.S.C.).

> **demeanor of one witness. In fairness, the Government would have to bear the expense of transporting the defendant's witnesses as well as its own, and the possibilities of abuse are obvious**.

*Kinsella, Id., at* fn. 12

Finally, the court's taking a 360 degree perspective on the implications Congress' expansion of its foreign commerce power into this arena should also be informed by the recent trajectory of the Supreme Court in excluding and narrowing the jurisdiction of the federal courts over circumstances arising outside our borders. Shortly after Congress enacted the Protect Act of which § 2423(c) is arguably the most emblematic extraterritorial law enforcement provision the Supreme Court began moving a deliberate polar opposite trajectory. Through a series of high profile case decisions the Supreme Court jurisprudence is tracing an arc of progressively <u>excluding and narrowing</u> of federal court jurisdiction over **diverse** circumstances developing outside our borders, especially occurring wholly within another foreign sovereign. No doubt Justice Thomas' cautions offered to courts of appeals in *Baston, Id.,* are informed and or framed by his understanding of the Supreme Courts efforts in ratcheting back on diverse theories of extraterritorial federal jurisdiction. See, e.g., *F. Hoffmann-La Roche Ltd. v. Empagran*, 542 U.S. 155 (2004), *Morrison v. National Australia Bank*, 561 U.S. 247 (2010), *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), *Daimler Ag v. Bauman*, 134 S. Ct. 746

11

(2014), *OBB PERSONENVERKEHR AG v. Sachs*, 136 S. Ct. 390 (2015), *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016).

Thus the proper scope of the foreign commerce clause as applied to the constitutionality of § 2423(c) is cabined by Supreme Court jurisprudence that is at once both very old (disavowing any U.S. jurisdiction over Americans' conduct abroad), and very recent (disclaiming any interest in the proposition that parties fly villages to the U.S. to adjudicate claims for injuries sustained wholly abroad). If permitted to intervene, Mr. Boyajian would add to this litigation first, that there is no room left for any proposed or presumed expansion of the Foreign Commerce Clause for criminalizing conduct occurring wholly within another sovereign, and second, that the court could find ample basis for refining and distinguishing from *Clark*. Mr. Boyajian asks this court to fully reach and resolve this constitutionality issue in this appeal, but if not then include in its opinion a statement of the need for en banc review.

## ARGUMENT

This court authorizes intervention in federal criminal appeals.[13] Whereas neither the Federal Rules of Appellate Procedure nor this Court's Circuit Rules address intervention on appeal, this Court has applied the standard for intervention

---

[13] Recent criminal appeals this court granted intervention include: *United States v. Lazarenko*, 08-10185 Order granting intervention at dkt #9 filed12/03/2008;*United States v. Bundy*, 16-30080 Order granting intervention at dkt #42 filed 5/27/16.

set forth in Rule 24 of the Federal Rules of Civil Procedure.[14,15] Under the Rule

intervention by right is granted to protect "an interest relating to the property or

transaction that is the subject of the action, and is so situated that disposing of the

action may as a practical matter impair or impede the movant's ability to protect its

interest, unless existing parties adequately represent that interest." and permissive

intervention is granted when "the applicant's claim has a common question of law

or fact within the main action, so long as there is no undue prejudice to the

parties."

Here, intervention is necessary and the court granting leave to intervene is

proper because the parties fail to fully and adequately present the constitutionality

issue. Mr. Boyajian's entwined liberty and economic interests are gravely at stake

in *this* litigation. The parties' omissions, concessions and waivers directly threaten

Mr. Boyajian's ability to obtain release from orders for his permanent life

---

[14] See, e.g., *In re Estate of Ferdinand E. Marcos Human Rights Litig.*, 536 F.3d 980, 984 (9th Cir. 2008). "Intervention on appeal is governed by Rule 24 of the F.R.Civ.P." *Bates v. Jones*, 127 F.3d 870, 873 (9th Cir. 1997).

[15] The putative intervenor bears the burden of demonstrating that he or she has satisfied each of these requirements: "To intervene under Fed.R.Civ.P. 24(a)(2), [intervenor] must show that (1) "it has a significant protectable interest relating to ... the subject of the action;" (2) "the disposition of the action, may as a practical matter, impair or impede ... [its] ability to protect its interest;" (3) "the application is timely;: and (4) the existing parties may not adequately represent ... [its] interest." *Day v Apoliona*, 505 F.3d 963 99th Cir. 2007) citing *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004), *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Circ. 2002).

imprisonment and for his payment of $50,000 restitution. For this reason, Mr.

Boyajian is entitled to intervene as of right under Rule 24(a)(2). In the alternative,

he easily satisfies the requirements for permissive intervention under Rule 24(b).

## I. MR. BOYAJIAN IS ENTITLED TO INTERVENE AS OF RIGHT PURSUANT TO RULE 24(a).[16]

Mr. Boyajian plainly satisfies each requirement of the Rule.

### A. Mr. Boyajian's Motion Is Timely.

Mr. Boyajian, as someone incarcerated in federal prison, moved to intervene

in this appeal within three weeks of learning that the appellant Pepe's lawyer

declined his client's request to file a Federal Rules of Appellate Procedure Rule

28(j) supplemental brief citing to the Thomas dissent in *Baston*, which though not

law, is arguably persuasive authority helpful to the court.[17] Pepe consistently

failing to avail of any reasonable opportunity to undercut the theory of *Clark*

directly threatens Mr. Boyajian's interests. No party can claim that it has been

"prejudice[d]" by any delay.[18] *Alisal Water*, *Id.*, at 921. Mr. Boyajian, moreover,

---

[16] Rule 24(a)(2) grants a party the right to intervene if (1) its motion is "timely," (2) it "ha[s] a significantly protectable interest relating to the property or transaction that is the subject of the action"; (3) it is "situated such that the disposition of the action may impair or impede the party's ability to protect that interest"; and (4) it is "not … adequately represented by existing parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing Fed. R. Civ. P. 24(a)(2)).
[17] *Baston*, like Pepe and Boyajian concerns a challenge to the criminalization of extra-territorial sexual exploitation-type conduct [involving foreign prostitution].
[18] Intervention would not burden the parties or the court. The government has clocked 11 years prosecuting Mr. Pepe, while keeping him imprisoned.

intervened "at th[e] particular stage of the lawsuit" in which his interests were

implicated—as soon as he learned that Pepe's counsel affirmatively declined to

further prosecute the appeal despite new authority that directly implicates Mr.

Boyajian's interests. Id.; see infra 6-13. Accordingly, Mr. Boyajian has met this

circuit's longstanding precedent, "[a] party seeking to intervene must act as soon as

he 'knows or has reason to know that his interests might be adversely affected by

the outcome of the litigation.'"[19] By any standard his motion is timely.[20]

### B.     Mr. Boyajian Has A Significant Protectable Interest In The Outcome Of This Appeal.

The Ninth Circuit has explained that an applicant for intervention has

adequate interests in an action where "the resolution of the plaintiffs' claims

*actually will affect* the applicant."[21] This test does not establish "a clear-cut or

bright-line rule," and "[n]o specific legal or equitable interest need be established."

Id. (citation omitted)). Instead, courts must make "a 'practical, threshold inquiry,' "

designed to "involve[e] as many apparently concerned persons" in an action "as is

---

[19] *United States v. Oregon*, 913 F.2d 576, 589 (9th Cir. 1990) (quoting *United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989)); accord *Alisal Water*, 370 F.3d at 922–23; *Commercial Realty Projects*, 309 F.3d at 1120.
[20] Cf. *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (deeming motion timely when made two years after case was filed); *Smith v. Los Angeles Unified Sch. Dist.,* 830 F.3d 843, 854 (9th Cir. 2016) (deeming motion timely when made twenty years after case was filed).
[21] *S. California Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (emphasis added) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998).

compatible with efficiency and due process." *Id.* (citations omitted).

56 year old Mr. Boyajian is seeking relief in this circuit from orders for permanent loss of liberty through imprisonment and for payment of $50,000 restitution. Intervention has become necessary as Mr. Boyajian's potential for obtaining physical and financial liberties is threatened by the ineffective presentation and both parties' omissions, concessions, waivers throughout the litigation. On this record, absent intervention, the court will likely perpetuate the holding in *Clark*. Mr. Boyajian has a cognizable interest in preventing that result.[22]

This Court has repeatedly recognized that a party has a protectable interest in the outcome of an action that might, "as a practical matter, bear significantly on the resolution of [its] claims" in a "related action."[23] For example, this Court has previously permitted the State of Hawai'i to intervene in a suit on the ground that it

---

[22] It cannot be disputed that Mr. Boyajian holds a "direct, non-contingent, substantial and legally protectable" interest in the litigation. *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981) (citation omitted).

[23] *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986), vacated on other grounds sub nom. *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987); see, e.g., *In re Estate of Ferdinand E. Marcos Human Rights Litig.*, 536 F.3d 980, 986-87 (9th Cir. 2008) (holding intervention proper where "an issue [the intervenor] raised in one proceeding [] lands in another proceeding for disposition"); *U.S. ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1396 (9th Cir. 1992) (finding no "serious[] dispute" that a party may intervene in a suit that might "preclude [it] from proceeding with claims" in a separate proceeding); *United States v. State of Or.*, 839 F.2d 635, 638 (9th Cir. 1988) (granting intervention where "an appellate ruling will have a persuasive stare decisis effect in any parallel or subsequent litigation").

"may have a precedential impact" on its claims in a related action. *Cf. Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007). Here, the Appellate Commissioner indicated this appeal may dispose Mr. Boyajian's separate appeal. Mr. Boyajian should have a "voice" when "th[e] decision is made." *Smith* v. *Pangilinan*, 651 F.2d 1320, 1325 (9th Cir. 1981).

### C. The Disposition Of This Action May Impair Mr. Boyajian's Ability To Protect His Interests.

The third requirement of Rule 24(a)(2) is satisfied when the action "may as a practical matter impair or impede [an applicant's] ability to safeguard [its] protectable interest." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 862 (9th Cir. 2016). For the reasons just discussed, that is true here. If the Court fails to resolve the constitutionality of the statute without addressing the flaw in *Clark's* premise, or other bases for cabining Congress's Commerce Clause powers, it will immediately subject Mr. Boyajian to irreparable harms. At that point, Mr. Boyajian might have no recourse. This Court's decision may cement precedent impeding another panel to grant the relief Mr. Boyajian needs without his ever being heard.

### D. Absent Intervention, Mr. Boyajian's Interests Will Not Be Adequately Represented.

The final requirement of the test for intervention is "minimal," and is satisfied so long as "the applicant can demonstrate that representation of its

interests 'may be' inadequate."[24] Three factors are relevant in conducting this inquiry: "(1) whether the interest of a present party is such that it will *undoubtedly* make *all* of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use*, *Id.*, at 898 (*emphases added*).

Here, these factors all point in the same direction. As shown above Pepe and the government have not only properly framed the constitutionality challenge being raised to the 2423(c) one of the provisions of the Protect Act but effectively waived full de novo review. Moreover, it is Mr. Boyajian who is tendering the reasoning backed by Thomas's dissent in *Baston*, which is more than the parties have chosen to do, so the court can feel confident that Mr. Boyajian may offer "necessary elements" to the current proceeding that the other parties have not presented. In sum, Mr. Boyajian is entitled to intervene as of right to preserve his interest in a fair opportunity to find justice within the Circuit relating to the validity of the statute directly implicating his liberty and economic interests.

//
//

---

[24] *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011); *see Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

## II.    IN THE ALTERNATIVE, MR. BOYAJIAN SHOULD BE GRANTED PERMISSIVE INTERVENTION PURSUANT TO RULE 24(b)

Alternatively, Mr. Boyajian should be permitted to intervene in this appeal pursuant to Rule 24(b).[25] Mr. Boyajian easily satisfies each of the Rule's requirements. This this is "a federal-question case" where a grant of intervention does not pose risk of enlarging the jurisdiction of the federal courts so "the independent jurisdictional grounds requirement does not apply."[26] Mr. Boyajian's motion is timely, being filed within three weeks after Pepe's counsel affirmatively declined to further prosecute the appeal, as discussed above. Mr. Boyajian seeks the same relief as Pepe: invalidation of the Protect Act statute of conviction; and therefore not introducing any issues "different from the issues in the underlying action." *S. California Edison Co.* v. *Lynch*, 307 F.3d 794, 804 (9th Cir. 2002).

Mr. Boyajian's intervention will not cause undue delay or prejudice but may speed the panel's consideration of this critically important matter. And Mr. Boyajian's intervention could promote <u>judicial economy</u>. As the same or

---

[25] Permissive intervention typically requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). If these criteria are satisfied, a court may deny a motion if intervention "will unduly delay the main action or will unfairly prejudice the existing parties." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

[26] *Freedom from Religion Found.*, *Id.*, at 844 (explaining that in this circumstance, the court's jurisdiction "is grounded in the federal question(s) raised by the plaintiff," and so "the identity of the parties is irrelevant").

substantially related issue is involved in Mr. Boyajian's case and several others[27], full consideration by the Court now will resolve some cases, narrow issues in others, and avoid other panels issuing piecemeal and or conflicting decisions. Moreover, the brief Mr. Boyajian would tender may help the panel appreciate its ability to distinguish *Clark* rather than be bound by it, and thus the panel may avoid the need for *en banc* review to overrule *Clark*. Mr. Boyajian should be permitted to participate in this matter, which is vital to the outcome of this appeal.

## CONCLUSION

Mr. Boyajian satisfies all the legal thresholds favoring intervention. Mr. Boyajian's motion to intervene as of right pursuant to Rule 24(a)(2) should be granted. In the alternative, Mr. Boyajian's motion for permissive intervention pursuant to Rule 24(b)(1)(B) should be granted. If intervention is granted, the court should further grant Mr. Boyajian leave to file a Brief setting out the referenced issue(s) in factual and legal depth and context.

DATED: May 31, 2017.                    Respectfully submitted,

Ronald Boyajian
Proposed Intervenor

---

[27] see e.g., *United States v. Jack Sporich* 15-50433[27], *United States v. Yuzef Abramov* 16-50104, *United States v. Erik Peeters* 16-50471, *United States v. Stanley Reckzo* 15-50247.

## DECLARATION OF RONALD BOYAJIAN

I, Ronald Boyajian, proposed intervenor, in pro per, in the above captioned direct criminal appeal, declare:

If called to testify I could competently testify to the following facts:

1.      I and Mr. Pepe are housed in the same unit in the same federal prison facility.

2.      March 2017 Mr. Pepe informed me he had seen a dissent by Justice Thomas in *Baston v. United States*, 580 U.S. __ (cert. denied, decided March 6, 2017) in the prison criminal law weekly reporter system, and then sent a letter to his appointed counsel, which is the Office of the Federal Public Defender Los Angeles care of Attorney James Locklin, asking about the possibility of a FRAP Rule 28(j) supplemental brief citing to the Thomas dissent as a possible aid in challenging the constitutionality of the statue at issue in his criminal appeal.

3.      On May 9, 2017 Mr. Pepe informed me he just received a letter from his counsel notifying that counsel will not address the Thomas dissent to the court.

4.      Mr. Pepe has provided his unequivocal consent to my proposed intervention in his criminal appeal.

The foregoing is true and accurate according to the best of my recollection under penalty of perjury.

Executed on 30 May 2017 in Tucson, AZ.

Ronald Boyajian

Ronald G. Boyajian

21

## NOTICE OF CONSENT OR OBJECTION
## BY THE EXISTING PARTIES

Appellant

Mr. Boyajian is advised in person by Mr. Pepe that Mr. Pepe unequivocally consents to Mr. Boyajian's proposed intervention. (See attached Declaration of Ronald Boyajian)

Appellee

Mr. Boyajian does not have expeditious access to the appellee (the government) as he is in custody in federal prison.

## CERTIFICATE OF COMPLIANCE

I certify that the forgoing Motion complies with the type-volume limitation of Fed. R. App. 27 because the text contains approximately 5,283 words [excluding Table of Contents, Table of Authorities, Declaration, Notice of Consent or Objection of the Existing Parties, Certificate of Service, Certificate of Compliance]. This Motion complies with the typeface and type style requirements of Fed. R. App. P. 27 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Times New Roman typeface.

Ronald Boyajian

## PROOF OF SERVICE

I hereby declare under penalty of perjury that on June 2, 2017, I deposited into the U.S. mail **RONALD BOYAJIAN'S MOTION TO INTERVENE; Declaration of Ronald Boyajian** in an envelope with first-class postage affixed addressed as follows:

Clerk of the Court
U.S. Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA 94119-3939

Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012

U.S. Attorney's Office
312 N. Spring Street
Los Angeles, CA 90012

Executed on June 2, 2017 in Tucson, AZ.

Ronald G. Boyajian

# EXHIBIT

THOMAS, J., dissenting

# SUPREME COURT OF THE UNITED STATES

## DAMION ST. PATRICK BASTON *v.* UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 16–5454.  Decided March 6, 2017

The petition for a writ of certiorari is denied.

JUSTICE THOMAS, dissenting from the denial of certiorari.

The Constitution, through the Foreign Commerce Clause, grants Congress authority to "regulate Commerce with foreign Nations." Art. I, §8, cl. 3. Without guidance from this Court as to the proper scope of Congress' power under this Clause, the courts of appeals have construed it expansively, to permit Congress to regulate economic activity abroad if it has a substantial effect on this Nation's foreign commerce. In this case, the Court of Appeals declared constitutional a restitution award against a non-U. S. citizen based upon conduct that occurred in Australia. The facts are not sympathetic, but the principle involved is fundamental. We should grant certiorari and reaffirm that our Federal Government is one of limited and enumerated powers, not the world's lawgiver.

I

Petitioner Damion St. Patrick Baston is a citizen of Jamaica. He forced numerous women to prostitute for him through violence, threats, and humiliation. One of his victims, K. L., was a citizen of Australia. She prostituted for petitioner in Australia, the United States, and the United Arab Emirates before escaping from his control. While in the United States, petitioner was arrested and charged with the sex trafficking of K. L. by force, fraud, or coercion, 18 U. S. C. §1591(a), "'in the Southern District of Florida, Australia, the United Arab Emirates, and elsewhere.'" 818 F. 3d 651, 658 (CA11 2016). As relevant

THOMAS, J., dissenting

here, §1591(a)(1) states that the sex trafficking must "affec[t] interstate or foreign commerce." Congress has granted federal courts "extra-territorial jurisdiction" over sex trafficking if the "alleged offender is present in the United States, irrespective of the nationality of the alleged offender." §1596(a)(2).

After a jury convicted petitioner, the District Court ordered him to pay K. L. $78,000 in restitution, which included the money she earned while prostituting for petitioner in the United States. See §1593 (requiring sentencing courts to order restitution in "the full amount of the victim's losses" for offenses under §1591). But the court refused to include in the restitution award the $400,000 that K. L. earned while prostituting in Australia. In the court's view, the Foreign Commerce Clause did not permit an award of restitution based on petitioner's extra-territorial conduct. 818 F. 3d, at 657, 660.

The Court of Appeals vacated the order of restitution and remanded with instructions to increase the award by $400,000 to account for K. L.'s prostitution in Australia. The court reasoned that whatever the outer bounds of the Foreign Commerce Clause might be, this Court has suggested that it has at least the same scope as the Interstate Commerce Clause. Relying on our Interstate Commerce Clause precedents, the Court of Appeals concluded that the Foreign Commerce Clause grants Congress power to regulate "activities that have a 'substantial effect' on commerce between the United States and other countries," including sex trafficking overseas. *Id.*, at 668 (citing *Gonzales* v. *Raich*, 545 U. S. 1, 16–17 (2005)).

## II

The Court of Appeals correctly noted that this Court has never "thoroughly explored the scope of the Foreign Commerce Clause." 818 F. 3d, at 667; accord, *e.g.*, Goodno, When the Commerce Clause Goes International: A Pro-

THOMAS, J., dissenting

posed Legal Framework for the Foreign Commerce Clause, 65 Fla. L. Rev. 1139, 1148–1149 (2013) ("The U. S. Supreme Court has not yet articulated the extent of Congress's power under the Foreign Commerce Clause to enact laws with extraterritorial reach. Because of this lack of guidance . . . lower courts are at a loss for how to analyze Foreign Commerce Clause issues"). The few decisions from this Court addressing the scope of the Clause have generally been confined to laws regulating conduct with a significant connection to the United States. See, *e.g.*, *Board of Trustees of Univ. of Ill.* v. *United States,* 289 U. S. 48, 57 (1933) ("The Congress may determine what articles may be imported into this country and the terms upon which importation is permitted"); *United States ex rel. Turner* v. *Williams,* 194 U. S. 279, 290 (1904) ("[T]he power to regulate commerce with foreign nations . . . includes the entrance of ships, the importation of goods, and the bringing of persons into the ports of the United States"). This Court has also articulated limits on the power of the States to regulate commerce with foreign nations under the so-called dormant Foreign Commerce Clause. See, *e.g.*, *Japan Line, Ltd.* v. *County of Los Angeles,* 441 U. S. 434, 449–454 (1979). We have not, however, considered the limits of Congress' power under the Clause to regulate conduct occurring entirely within the jurisdiction of a foreign sovereign.

In the absence of specific guidance, the courts of appeals—including the court below—have understandably extended this Court's Interstate Commerce Clause precedents abroad. In *United States* v. *Lopez,* 514 U. S. 549, 558–559 (1995), we held that Congress is limited to regulating three categories of interstate activity: "the use of the channels of interstate commerce," "the instrumentalities of interstate commerce," and "activities that substantially affect interstate commerce." Some courts of appeals "have imported the *Lopez* categories directly into the

THOMAS, J., dissenting

foreign context," some "have applied *Lopez* generally but recognized that Congress has greater power to regulate foreign commerce," and others have gone further still, "holding that Congress has authority to legislate under the Foreign Commerce Clause when the text of a statute has a constitutionally tenable nexus with foreign commerce." *United States* v. *Bollinger*, 798 F. 3d 201, 215 (CA4 2015) (internal quotation marks omitted); see also *id.*, at 215–216 ("Instead of requiring that an activity have a substantial effect on foreign commerce, we hold that the Foreign Commerce Clause allows Congress to regulate activities that demonstrably affect such commerce").

## III

I am concerned that language in some of this Court's precedents has led the courts of appeals into error. At the very least, the time has come for us to clarify the scope of Congress' power under the Foreign Commerce Clause to regulate extraterritorially.

## A

The courts of appeals have relied upon statements by this Court comparing the foreign commerce power to the interstate commerce power, but have removed those statements from their context. In certain contexts, this Court has described the foreign commerce power as "exclusive and plenary," *Board of Trustees, supra,* at 56–57 (citing *Gibbons* v. *Ogden*, 9 Wheat. 1, 196–200 (1824)), explaining that Congress' commerce power "when exercised in respect of foreign commerce may be broader than when exercised as to interstate commerce," *Atlantic Cleaners & Dyers, Inc.* v. *United States*, 286 U. S. 427, 434 (1932); see also *Brolan* v. *United States*, 236 U. S. 216, 218–220 (1915). None of these opinions, however, "involve[d] legislation of extraterritorial operation which purports to regulate conduct inside foreign nations."

THOMAS, J., dissenting

Colangelo, The Foreign Commerce Clause, 96 Va. L. Rev.
949, 1001 (2010). This Court's statements about the com-
parative breadth of the Foreign Commerce Clause are of
questionable relevance where the issue is Congress' power
to regulate, or even criminalize, conduct within another
nation's sovereign territory.

Moreover, this Court's comparative statements about
the breadth of the Foreign Commerce Clause have relied
on some "evidence that the Founders intended the scope of
the foreign commerce power to be greater" than Congress'
power to regulate commerce among the States. *Japan
Line, supra,* at 448. Whatever the Founders' intentions
might have been in this respect, they were grounded in the
original understanding of the Interstate Commerce
Clause. But this Court's modern doctrine has "drifted far
from the original understanding." *Lopez, supra,* at 584
(THOMAS, J., concurring). For one thing, the "Clause's
text, structure, and history all indicate that, at the time of
the founding, the term '"commerce" consisted of selling,
buying, and bartering, as well as transporting for these
purposes.'" *Raich,* 545 U. S., at 58 (THOMAS, J., dissent-
ing) (quoting *Lopez, supra,* at 585 (opinion of THOMAS, J.)).
For another, "the very notion of a 'substantial effects' test
under the Commerce Clause is inconsistent with the origi-
nal understanding of Congress' powers and with this
Court's early Commerce Clause cases." *United States*
v. *Morrison,* 529 U. S. 598, 627 (2000) (THOMAS, J.,
concurring).

Thus, even if the foreign commerce power were broader
than the interstate commerce power as understood at the
founding, it would not follow that the foreign commerce
power is broader than the interstate commerce power as
this Court now construes it. But rather than interpreting
the Foreign Commerce Clause as it was originally under-
stood, the courts of appeals have taken this Court's mod-
ern interstate commerce doctrine and assumed that the

6            BASTON *v.* UNITED STATES

THOMAS, J., dissenting

foreign commerce power is at least as broad. The result is a doctrine justified neither by our precedents nor by the original understanding.

### B

Taken to the limits of its logic, the consequences of the Court of Appeals' reasoning are startling. The Foreign Commerce Clause would permit Congress to regulate any economic activity anywhere in the world, so long as Congress had a rational basis to conclude that the activity has a substantial effect on commerce between this Nation and any other. Congress would be able not only to criminalize prostitution in Australia, but also to regulate working conditions in factories in China, pollution from power-plants in India, or agricultural methods on farms in France. I am confident that whatever the correct interpretation of the foreign commerce power may be, it does not confer upon Congress a virtually plenary power over global economic activity.

\*     \*     \*

We should grant certiorari in this case to consider the proper scope of Congress' Foreign Commerce Clause power.

I respectfully dissent.