No. 14-50095

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,           )
                                    )
        Plaintiff-Appellee,         )
                                    )
        v.                          )
                                    )
MICHAEL JOSEPH PEPE,                )
                                    )
        Defendant-Appellant.        )
_____     )

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JUL 0 3 2017

FILED
DOCKETED _____
             DATE        INITIAL

---

**RONALD BOYAJIAN'S REPLY TO GOVERNMENT'S RESPONSE
TO MOTION TO INTERVENE; EXHIBITS**

---

On Appeal from the United States District Court
for the Central District of California

The Honorable Dale S. Fischer, Presiding
No. CR-07-00168-DSF

Ronald G. Boyajian

Register # 33900-112,
U.S. Penitentiary Tucson
P.O. Box 24550
Tucson, AZ 85734

Proposed Intervenor,
In Pro Per

**Table of Contents**

Introduction ....................................................................... 1

I.     Ronald Boyajian's Case is Not "Completely Unrelated
       to Pepe's" Case ........................................................... 2

II.    The US Attorney Los Angeles is coasting on the
       concession of the Federal Public Defender Office .......................... 8

III.   Mr. Boyajian is not bound by any concession
       of the Federal Public Defender ......................................... 10

IV.    Intervention is available in criminal appeals, and
       Mr. Boyajian has satisfied the requirements for
       permissive or mandatory intervention ..................................... 10

V.     The government cites cases inapposite to the
       matter before the court ..................................................13

VI.    Mr. Boyajian is asking that the court fully attend to
       and resolve the constitutional issues at the core of
       Pepe's appeal ............................................................. 15

VII.   No Prejudice to the parties by extending the proceedings ............... 16


Conclusion ........................................................................ 20

Certificate of Compliance ......................................................... 21

Proof of Service .................................................................. 22

Exhibits .......................................................................... 23

       Ex. A.
         • 11/20/2010 Los Angeles Times article re AUSA Lulejian and
           corruption in the US Attorney Office Los Angeles;
         • DOJ Award by Eric Holder to John Lulejian re Pepe prosecution win;
         • list of cases ASUA Lulejian has been counsel of record

i

**Ronald Boyajian's Reply to Appellee's Response to Proposed Intervention**

Introduction

Mr. Boyajian responds to the government objections as follows.

The government concedes, as it must[1], facts essential to granting intervention: Pepe and Boyajian were both convicted under 18 U.S.C. 2423(c) and Mr. Boyajian has protectable interests at stake. What the government omits is that both defendants were part of the same illegal government operation in Cambodia, which resulted in both defendants' kidnapping and rendition to face charges in the United States for alleged crimes that occurred entirely in Cambodia, where they were residing at the time.

The government nevertheless presses denial of the intervention because, it claims, the Pepe and Boyajian prosecutions are "wholly unrelated." Nothing could be further from the truth. Mr. Boyajian already set out in the motion to intervene that the legal issues to be briefed are the same in both cases, and in the cases of many similarly situated others. [2] The government, through its disingenuous claim,

---

[1] AUSA Donahue, the lead prosecutor in the Pepe case, was Mr. Boyajian's lead prosecutor for over eight years

[2] There are many individuals-- an entire class of oppressed persons -- similarly situated, on appeal, post-verdict or plea, released—Michael Abramov, Jack Sporich, Erik Peeters, and several others. Others like Stanley Reczko and Curtis Fahlberg were prosecuted using § 2423 but convicted using another statute would yet be assisted by the court's resolution of the legal issues raised by the proposed intervention in this appeal.

1

seeks to have this panel view the Pepe case in isolation so as to avoid scrutiny of its illegal operations and to foster a fundamental misunderstanding of the context for the constitutional violation at issue in these and other similar cases. Not only is intervention appropriate here, but it is necessary to ensure the Court has a full understanding of the significance and ramifications of this improper expansion of the Foreign Commerce Clause, as elucidated in Justice Thomas's recent dissent in Baston.

## I.  Ronald Boyajian's Case is Not "Completely Unrelated to Pepe's" Case.

During the March 6, 2017 hearing regarding self-representation, Commissioner Shaw acknowledged that the appeals/issues in the two cases were related. Already, as Mr. Boyajian recited previously, the government has informed this court under the Appellate Rules that the pending Sporich appeal is related on the same legal /constitutional grounds raised in this appeal. And there are several more cases pending, whether or not they advance these issues they all at their core depend for subject matter jurisdiction and other bases for proper interpretation of Congress' commerce powers, see, e.g. U.S. v Yuzef Abramov, U.S. v Michael Dodd, U.S. v Erik Peeters, U.S. v Kenneth Gaylord Stokes [out of circuit prosecution, serving sentence in this circuit], U.S. v Stanley Reczko, and many others, are just the tip of the iceberg of a membership in a class of targeted and

convicted persons whose core legal issues emanate out of Congress's invoking its powers to regulate commerce .

But the relatedness is far deeper. Witness the government's operation[3]—for no less than eight years in Boyajian and no less than 11 years in Pepe, the U.S. Attorney's Office – and specifically AUSA Donahue –simultaneously quarterbacked both the Pepe and Boyajian investigations, foreign searches and foreign detentions and foreign arrests and foreign Mirandizations and also kidnapping foreign children right out of their family homes, and imprisoning for ten years or more, until they testified and then longer, all in the name of "the people" and Congress' powers to regulate commerce.

To be clear, in order to populate a § 2423(c) based U.S. trial with a defendant, witnesses, and tangible evidence the government must kidnap and remove defendants, and child witnesses, and seize items which are all later packaged for rendition to the United States. To ensure their compliance on the stand, government witnesses undergo years of coercive religious deprogramming and permanent sequestration away from families and community and country. Just for Boyajian and Pepe a score of Vietnamese children were illegally and

---

[3] Mr. Boyajian is confined in maximum security BOP facility. He would like to provide documentary support for his response to the government's false assertion that the two cases are "wholly unrelated". He intends to supplement pleadings with an appendix in 2 weeks from the date of this filing.

3

permanently imprisoned in US custodial detentions, and many remain imprisoned to this day. This court should be especially attentive to the child kidnappings, being exactly that, no lawful judicial guardianship or custody removal of parents. Worse still is the government's CRUEL installation of oppressive custodians who *hate* the Vietnamese religious customs and often overtly hate and mistreat that race. Before proceeding it would relive this court of many moral and ethical burdens and obligations if it first required the government to produce the foreign court orders for removing the parents as guardians and giving the children over to the counter-Vietnamese religious conflicted U.S. contractors. There are none.

Mr. Boyajian is aware that there are no such court orders for any child removed from their homes by U.S. forces in Pepe [Cambodia], Boyajian [Cambodia], Peeters [Cambodia], Sporich [Cambodia], Dodd [Cambodia], Reczko [Philippines], and many others.

In fact the government's operation *features* an across the board disdain for judicial sovereignty –abduct children without any judicial order, seized without warrants, arrest without warrants and so on. The government's only understanding of the statute contemplates enforcement using techniques and attitude developed for outside the code of law counter-terrorism operations. Justice Thomas warns severe abuses are inevitable unless opaque extra-territorial law enforcement operations under § 2423(c) are brought to an end.

4

This merits panel has distinct advantage over the Clark merits panel. There is now available 15 years of accumulated experience helping to visualize the pattern government operation underlying its enforcement of § 2423(c). Mr. Boyajian is researching how best to present the proposed briefing. Beyond the preamble leading up to the necessity for the "substantial effects" test analytics, he is contemplating there might be several legally related bases this panel can consider to refine and distinguish Clark while finding that Congress's foreign commerce power is not so expansive as to cover for and forgive all these governmental crimes, including crimes against humanity.

The answer then to the relatedness question provides a picture of a formulaic approach that the government doubtless would argue is necessary to the effectuation of the statute as legislated. If so, and this is proven over and over in Pepe and Boyajian and many more "exemplar" cases, the § 2423c statute cannot be enforced without the evisceration and utter negation of the most fundamental universal human rights and rights under foreign domestic laws, under the laws of nations, international law, and U.S. "domestic" law. This countervailing tension was not appreciated at the time of the presentations to the Clark panel, and so the new information Mr. Boyajian can supply this panel opens the door to new legal options the court might utilize for refining and distinguishing from Clark.

5

If the court finds the resolution of the dispute over the relatedness question is material to its determination of the intervention rights or permissions, then Mr. Boyajian reserves filing a response on that point with documentary support. He is in maximum security custody deprived of his case materials and also of any means for ready access to documentary materials. Upon notice by the court, he will file supplemental pleading with specific documentary evidence in support and also seek mandatory judicial notice of said materials supporting relatedness within three weeks' from receipt of service of any invitation for opportunity or need to submit said filing. Through said proposed filing, if deemed pertinent, Mr. Boyajian will proffer extensive evidence of prosecution/government operation "relatedness" and even "intertwining" contained in leaked published diplomatic cables from WikiLeaks, government press releases, pertinent records from Pepe docket and from Boyajian docket and information and records pertaining to Cambodian court lawsuits over child kidnapping claims against U.S. contractors [the same contractors involved the Pepe case], and various US agency, world press/media, and Cambodian press reports, and an array of additional materials.

From memory, Mr. Boyajian points to some points of reference beyond what is said above for legal and factual relatedness from the perspective of the government operations. The  government's operations as to both defendants involved the same Homeland Security team, the same FBI team, and the same so

6

called evangelical faith-based funded Blackwater-type operatives acting as government contractors, namely World Vision, World Hope, Hagar, International Justice Mission, and AGAPE among others. Both Pepe and Boyajian were subjected to the identical extra-judicial kidnapping, identical local charges brought with U.S. instructions, extended torture detention in the same infamous "killing fields" Prey Sar prison, and then illegal rendition intercontinentally to the United States.

Also very important to relatedness, i.e. evidence of the government's formulaic operation, the government trained paid and positioned its "desired" foreign police, installed its "desired" jurists and its "desired" prosecutors [both public and private] for its preplanned § 2423(c) cases enabling the government to harness the foreign courts, Ministry of Justice, and Ministry of Interior, and cover themselves while they operate with boots on the grounds with total impunity. Moreover, these operations where year over year the government showers officials at all levels with many good things aggravates public corruption here and abroad.

All this interference results in de facto jurisdiction with control over the internal affairs of foreign sovereigns enabling sovereignty violating ground operations by government agents and contractors. Voiding of foreign country due process guarantees results for targets such as Mr. Pepe and Mr. Boyajian and many

7

others similarly situated, including horrendous governmental abuses against "fill in the blank" indigenous non-white populations and especially against their children.

Mr. Boyajian has moved for limited intervention based on law—challenging a statute's constitutionality, but likely also relevant to the merits panel decision on this motion to intervene (and beyond), as pointed out by the government, are these relatedness indicators. These formulaic factual underpinnings of the governmental operations are intertwining the 2423(c) prosecutions between Pepe and Boyajian and possibly with certain others similarly situated.[4]

## II.    The US Attorney Los Angeles is coasting on the concession of the Federal Public Defender office

The government has long been riding on the federal defender's concession that facial and as applied challenges to the statue were foreclosed by the holding in Clark. Years ago, before Pepe's appeal, the DOJ had already disseminated

---

[4] While the Pepe and Boyajian cases are certainly related for purposes of the Foreign Commerce Clause analysis, there are key factual distinctions between the cases. The key factual distinguishing aspect is despite 24/7 Homeland Security and FBI surveillance, there was never any evidence of association between Mr. Boyajian and any child, much less SL, the victim the government used for the jury trial. In addition, SL, while in government custody, testified in open public proceedings in Cambodia that she never had any association with Boyajian and she had never entered her neighbor's blue house where Boyajian was visiting on the night of the arrest. Thus, Mr. Boyajian's case presents an even more egregious example of the government's overreach in its Cambodian operations and prosecutions.

department-wide that the Office of the Federal Public Defender Los Angeles had

made a fatal concession and that this legal reasoning should be trotted out and dry

run tested in non-ninth circuit cases. See U.S. v Bollinger, government/appellee's

answering brief "Brief of the United States" at Fourth Circuit Court of Appeals:

14-4086 Doc: 35 Filed: 10/14/201, appendix beginning page 11, District judge

Honorable Dale Fischer, Order denying motion to dismiss [dkt #57]:

> [Pepe] argues that application of § 2423(c) violates international law
> and deprives Defendant of due process. (Mot. 16-19.) **As [Pepe]
> concedes** (Mot. 16 n.3.), both of these arguments are foreclosed by
> Clark, which held that § 2423(c) is valid under international law and
> comports with due process. 435 F.3d at 1106-09.
> [**Bold** emphasis added]

Accordingly, Mr. Boyajian is not seeking, as the government states, to do a

better job than Pepe's expert counsel. Mr. Boyajian's due process rights are

adversely impacted by incomplete presentation by both parties. However, Pepe's

counsel, the Office of the Federal Public Defender, is arguably "locked in" to the

present waiver of the highest level facial and as applied constitutional challenges

by its own concession as to *Clark* tendered a *decade* earlier in the district court.[5]

---

[5] As far as Mr. Boyajian is aware, the government has apparently never
affirmatively asserted or conceded that any legal issues are absolutely foreclosed
from full de novo review as to the constitutionality of § 2423(c). The government
here is drafting behind Pepe's concession, not exposing or committing to any strict
legal position.

9

**III.    Mr. Boyajian is not bound by any concession of the federal public defender.**

Mr. Boyajian has argued this constitutional issue for years in the district court, many instances orally, and submitted in various written pleadings [see e.g., U.S. v Boyajian 09-933-case dkt 1044 (2015)]. Mr. Boyajian also argued the constitutional issue in some detail in testimony he provided to the Appellate Commissioner at Faretta hearing conducted on March 6, 2017.

In sum, the legal issues involved in both appeals are clearly related. While the government attempts to cabin Mr. Boyajian's argument as an "as-applied" challenge to section § 2423(c), Mr. Boyajian in fact intends to raise both facial and as-applied challenges to that section. Obviously, a facial challenge would affect both cases. Moreover, even an "as-applied" challenge affects both cases because, as alluded above, the relevant circumstances are the same. The issue in both cases is whether section § 2423(c) may constitutionally be applied to allow the United States government to seize and prosecute American citizens locating or residing abroad for conduct occurring entirely in a foreign country.

**IV.    Intervention is available in criminal appeals, and Mr. Boyajian has satisfied the requirements for permissive or mandatory intervention**

Contrary to the government assertion otherwise, motions for intervention are routinely considered in criminal appeals and granted whenever appropriate. Mr.

10

Boyajian previously walked the court laboriously through an abundance of statutory and case law of intervention. He also specifically cited to this court's recent orders *granting* intervention in two criminal appeals: United States v. Lazarenko, 08-10185 Order granting Kiritchenko's intervention at dkt #9 filed12/03/2008; and United States v. Bundy et al, 16-30080 Order granting Blaine Cooper as intervenor at dkt #42 filed 5/27/16. These cases were cited as proof that intervention is available, permissible, and granted when appropriate in criminal appeals in this circuit.

In *Bundy*, prosecution of both defendants (appellant and proposed intervenor) were run by the same prosecutor in the same sweep operation just as in Operation Predator for Pepe/Boyajian. More particularly, when proposing intervention as of right [and or permissively] Blaine Cooper argued:

> Applicable legal precedent is clear that this Court has the authority to allow the movant to intervene as an exercise of its appellate power. Intervention is necessary here to promote judicial efficiency and assure effective appellate review. Defendant, Blaine Cooper, faces the same issues as those named in the notice of appeal.

> ... Disposition of this Case without participation of Mr. Cooper would impede his ability to protect his interest. [...]. Without inclusion of Mr. Cooper there would be inconsistent results leading to confusion and disparate treatment of similarly situated defendants.

> ... The Ninth Circuit has consistently followed the Supreme Court's statement in *Trbovich v. United Mine Workers of America*, 404 U.S.

11

528, 538 n.10 (1972), that "[t]he requirement of [Rule 24(a)(2)] is satisfied if the applicant shows that representation of his interest 'may be" inadequate; and the burden of making that showing should be treated as minimal." See, e.g. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Circ. 2011) ("The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th circ. 2003)).

Blaine Cooper certainly shares a common goal with the named appellants; however, adequate representation and articulation of Mr. Cooper's interests warrants full participation by counsel for Mr. Cooper.

*Bundy, Id.* Doc. # 40, filed 5/26/16.

In *Lazarenko,* the intervenor Kritichenko's economic interests (restitution) would be impacted by the outcome of the proceedings. Pavel Lazarenko, a former Prime Minister of Ukraine, did not oppose intervention however he argued in the ensuing litigation that Kiritchenko had "unclean hands" rendering Kiritchenko's legal posture was untenable as a matter of law. Ultimately the court did not find Kiritchenko's argument persuasive but it never suggested that therefore intervention had been improvidently granted. Similarly, Mr. Boyajian's proposed intervention should be granted in the same vein as potentially augmenting the court's ability to arrive at a just and orderly resolution. Mr. Boyajian's proposed intervention should be allowed to play out. He has made a showing of the legal argument to be developed—disclosed in fulsome manner that the emanating point

12

begins with Justice Thomas' dissent in *Baston*. He is also in contact with

constitutional law professors, among other legal scholars to brainstorm rounding

out a four corners presentation of this crucial constitutional law challenge.

## V.    The government cites cases inapposite to the matter before the court

The government's reliance on this Court's decision in United States v.

Kovall, No. 15-50419, 2017 WL 2324721 (9th Cir. May 30, 2017) is misplaced.

Kovall involved an appeal by the victim from restitution orders imposed as part of

sentencing. This Court dismissed the appeal because a neither the Mandatory

Victims Restitution Act nor the Due Process Clause confers on victims the right to

challenge such orders on appeal. It was in the context of a discussion of the right of

a victim to appeal a district court's order on restitution that this Court considered

the issue of intervention in a criminal case.

Also misplaced is the government's reliance on Whitmore v. Arkansas, 495

U.S. 149 (1990), a case in which a "next friend" attempted to intervene in a habeas

proceeding where a death row prisoner had stated under oath that he wished to

abandon his appeal. In rejecting standing, the Court wrote:

> [W]e think the scope of any federal doctrine of "next friend" standing
> is no broader than what is permitted by the habeas corpus statute,
> which codified the historical practice. And in keeping with the ancient
> tradition of the doctrine, we conclude that one necessary condition for
> "next friend" standing in federal court is a showing by the proposed
> "next friend" that the real party in interest is unable to litigate his own

13

cause due to mental incapacity, lack of access to court, or other
similar disability.

Id., at pp. 164- 165. Whitmore bears no resemblance to what is at issue in Mr.

Boyajian's motion to intervene in Mr. Pepe's appeal.

Finally, the government asks this Court to deny the motion, citing to United

States v. Lepp, No. CR 04-00317, 2013 WL 173960 (N.D. Cal. Jan 16, 2013)

which was a § 2255 proceeding, Olsen moved to intervene based on a

"longstanding interest in the sacramental use of marijuana." He was a member of

the Ethiopian Zion Coptic Church which had, as part of church doctrine, a belief

that marijuana is the mystical blood of Christ. Olsen argued that Lepp would have

standing to challenge the "federal misclassification of marijuana because he is

currently detained." The district court denied Olsen's "attempt to transform this

criminal proceeding into impact litigation." The § 2255 motion concerned Mr.

Lepp's sentence and not the constitutionality of marijuana laws. Unlike the

circumstances in Lepp, Mr. Boyajian's concern is not to transform the issues

presented in Mr. Pepe's appeal but to bring to this Court's attention to Justice

Thomas' dissent in Baston v. United States, 137 S.Ct. 850 (2017) concerning "the

scope of congressional power to regulate extraterritorially under the Foreign

Commerce Clause.

//

14

**VI.    Mr. Boyajian is asking that the court fully attend to and resolve the constitutional issues at the core of Pepe's appeal.**

Mr. Boyajian's protectable interests could not be more clear. Given the tenor of the government's response, there can be no doubt that AUSA Donahue will be back pressing on the court in Mr. Boyajian's appeal arguing that the decision of this panel in Pepe be applied against Mr. Boyajian. For this reason Mr. Boyajian must close the gap in the appellate proceedings currently lacking any substantive briefing as to the facial and as applied challenge to constitutionality of the statute.

Mr. Boyajian can develop timely briefings useful to the court. He has never been sanctioned or removed from pro se status in 42 months of very fluid contentious adversarial district court proceedings which he litigated for 21 months over issues of counsel and after grant of formal Faretta status for a second period of 21 months through a six week trial and sentencing. If Mr. Boyajian's status as pro se on his direct appeal is material to this court--he believes it is not material-- then the court should be aware that Mr. Boyajian moved to proceed under self-representation on appeal, the government opposed, and the court ruled denying Faretta status. That ruling is currently subject to a motion for reconsideration, and a stay of record preparation and briefing schedule. [dkt #32, filed 6/19/17 in case 16-50327]

15

**VII.   No Prejudice to the parties by extending the proceedings**

The government in throwing stones argues Mr. Boyajian's participation will somehow ruin the proceedings. A warranted extension of proceedings to allow full briefing via intervention will not delay or disrupt justice *in this case*. First, Mr. Pepe is not out on bail during appeal, he is imprisoned in maximum security prison serving his 210 year sentence. Second, the government complains of disruption and delay but has not made any particularized showing of what exactly the prejudice to the parties would be were the court to allow augmented briefings for the proposed purpose.

At oral argument, Judge Thomas was surprised there was some kind of a lapse in time between verdict and sentencing, asking what happened? It is relevant the same AUSA Donahue seeking denial of grant of intervention citing prospects for disruption and delay, herself evaded Judge Thomas legitimate curiosity. She waved off time lapse, not mentioning it was six years, and also not mentioning it was six years of delay and disruption caused solely by government misconduct quarterbacked from the same U.S. Attorney Office.

AUSA Donahue was deeply involved in managing motion for new trial proceedings where Judge Dale Fischer noted egregious government misconduct "The Court in no way condones what appears to be egregious misconduct by the case agent and Vietnamese interpreter." [dkt#484, entered on 2/5/2014]. A ruthless

16

prosecutorial ploy to shade government witness testimony to put a fix in to rig the verdicts was uncovered, the criminal malfeasance caught up the US Attorney Office, the ICE supervisory team in Bangkok [Mr. Boyajian's same team] and AUSA Donahue's case interpreter pre-trial inveigling herself with the victim witnesses.

The Los Angeles Times story version, apparently leaked by the prosecutor, is attached at Exhibit A, *Verdict in key child sex-trial at risk. Attorneys for an ex-Marine convicted of abusing undragged girls in Cambodia say a Vietnamese interpreter was having an affair with a federal agent, undermining their case.* Scott Glover, Los Angeles Times, Nov. 20, 2010] The U.S. Attorney Office reportedly pimped out its female Vietnamese interpreter by paying her while sleeping with the ICE supervisory case agent. This exploiting and exploited Vietnamese interpreter ingratiate herself to her ICE case agent "john" spending unmonitored time with the child victim witnesses before she interpreted for them at trial. That *misconduct earned the US Attorney Los Angeles a six years respite* before facing this panel. During that delay and disruption, the U.S. Attorney dispatched AUSA Donahue's accomplice AUSA Lulejian far beyond subpoena power into the former Soviet Union and kept him posted there on "official" business for years until jurisdiction passed to this court and no subpoena would be likely to ever be revived over the matter. Today, AUSA Lulejian returns from the

17

shadows reinstated stateside hi-fiving his co-counsel AUSA Donahue over job well done on "their" win in Pepe.

Immediately on the heels of this misconduct the same U.S. Attorney—specifically AUSA Donahue-- REPEATED her long pre-planned sophisticated orchestration of interpreter fraud, which was utilized for the express purpose to eviscerate, and did nullify Mr. Boyajian's Fifth and Sixth Amendment rights at trial. There are several docket entries in Boyajian district court including expert declaration, and also post trial concession by the government [ignored by Judge Snyder]. The point for this motion is that besides being another degree of "relatedness", the may be a question whether this court should ask if proceedings would be best served if any prosecutor or the U.S. Attorney Office self-recused.

A new development not available when Mr. Boyajian filed his motion to intervene, shows that the US Attorney Office Los Angeles has chronic prosecutorial misconduct problem of the most extreme nature. Judge Kozinski famously complained a few years back prosecutors are skating scot free in our criminal justice system as has already occurred in Pepe and Boyajian.

The breaking news is that the same U.S. Attorney Office **hid from this court** on multiple occasions that it was putting the fix in to rig jury verdicts in at least **two** very high profile extra-territorial prosecutions for the infamous 1985 kidnapping torture murder of DEA agent Enrique Camarena in Mexico. AUSA

18

Donahue repeatedly cited in Boyajian district court that Boyajian's prosecution was sound because it was modeled on Camarena torture murder prosecutions. AUSA Donahue pointedly and very specifically invoked in Boyajian's proceedings that Boyajian was kidnapped [together with Sporich and Peeters] from Cambodia outside the code of law because that procedure was given a pass by the Supreme Court. She repeatedly cited the Supreme Court's decisions giving the government a free pass on the Camarena murder revenge kidnappings—which this court should recall it found offensive enough to nullify jurisdiction, but was repeatedly overruled by the Supreme Court in U.S. v Machain _____ and in U.S. v Verdugo-Urquidez _____.

Therefore Mr. Boyajian request judicial notice by this court of orders recently issued from District Judge Kronstadt, central district, who IMMEDIATELY AFTER LEARNING this same U.S. Attorney had criminally rigged verdicts 32 years ago, **reversed/vacated** the separate trial jury convictions for the abduction and torture/murder in Mexico of DEA special agent Enrique Camarena against Mr. Matta-Ballesteros (2:16-CV-02596-JAK Doc. 37, filed 5/22/17) and Mr. Verdugo-Urquidez (2:15-cv-09274-JAK Doc. 37, filed 5/22/17).

For 32 years this U.S. Attorney kept under wraps its successful commission of an enormous fraud on two juries, on the public, on the DEA and on the family and relatives of torture-murdered DEA agent Camarena.

19

Unlike where in *Pepe* the prosecutorial misconduct gained this same US Attorney, AUSA Donahue, six years respite, in the Camarena murder prosecutions this same U.S. Attorney gained <u>32 years avoidance of scrutiny.</u> The repeated severe *Napue* violations found by Judge Kronstadt in *Matta-Ballesteros* and *Verdugo-Urquidez are exactly the kinds of issues raised by Mr. Boyajian in pro se at trial. Judge Kronstadt filling in the past helps Mr. Boyajian establish pattern motive identity of the prosecutorial perpetrators.* Mr. Boyajian offers these murder conviction reversals should be taken into account to limit this court's already expressed virtual complete deference to this same U.S. Attorney, who now without any showing of prejudice, opposes the very specifically circumscribed LIMITED intervention.

Conclusion

Mr. Boyajian has presented the requisite showing that a viable legal controversy exists over the constitutionality issues. He has tendered irrebuttable evidence that fair-minded jurists can debate and differ. The motion should be granted because without intervention, Mr. Boyajian's right to fair consideration of this issue will be compromised.

Dated: June 26, 2017                    Respectfully submitted,

Ronald Boyajian, in pro per

20

## CERTIFICATE OF COMPLIANCE

I certify that the forgoing Motion complies with the type-volume limitation of Fed. R. App. 27 because the text contains approximately 4,602 words [excluding Table of Contents, Certificate of Service, Certificate of Compliance]. This Motion complies with the typeface and type style requirements of Fed. R. App. P. 27 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Times New Roman typeface.

Ronald Boyajian

PROOF OF SERVICE

I hereby declare under penalty of perjury that on June 26, 2017, I deposited into the U.S. mail **RONALD BOYAJIAN'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO INTERVENE; EXHIBITS**

in an envelope with first-class postage affixed addressed as follows:

Clerk of the Court
U.S. Court of Appeals for the Ninth Circuit
P.O. Box 193939
San Francisco, CA 94119-3939

Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012

U.S. Attorney's Office
312 N. Spring Street
Los Angeles, CA 90012

Executed on June 26, 2017 in Tucson, AZ.

Ronald G. Boyajian

# EXHIBIT A

**Verdict in key child-sex trial at risk**

**Attorneys for an ex-Marine convicted of abusing underage girls in Cambodia say a Vietnamese interpreter was having an affair with a federal agent, undermining their case.**

November 20, 2010|By Scott Glover, Los Angeles Times

A costly and emotionally charged child sex case in which prosecutors traveled to Cambodia and paid to fly frightened young victims to the United States is under fire by defense attorneys amid allegations that court interpreters were biased in favor of the prosecution.

One of the interpreters assigned to the case of Michael Joseph Pepe admitted being involved in a sexual relationship with the lead investigator around the time the case went to trial in May 2008, according to documents filed in federal court in Los Angeles.

Pepe, a retired U.S. Marine captain who was working as a teacher in Cambodia, was convicted of having sex with seven girls ages 9 to 12. The girls, speaking through Vietnamese and Khmer interpreters, testified that Pepe drugged, bound, beat and raped them in his compound in Phnom Penh, the Cambodian capital.

After Pepe's conviction, prosecutors discovered and disclosed the relationship between interpreter Ann Luong Spiratos and Gary J. Phillips, a special agent with Immigration and Customs Enforcement.

Following the disclosure, Pepe's defense attorneys asked U.S. District Judge Dale S. Fischer for a new trial, arguing that the "secret ... sexual relationship" between Spiratos and Phillips resulted in skewed interpretations by Spiratos and a colleague, which aided the prosecution and undermined the defense.

"Only after Mr. Pepe was convicted did the defense learn that the Vietnamese language interpreter was not the disinterested interpreter that she appeared," wrote deputy federal public defender Charles C. Brown. "We now know that what the jury heard during the trial was not what the witnesses said but what the interpreters said they said." Brown argued that Spiratos' alleged bias spread to another interpreter she brought in to work on the case.

As a result of the controversy, Pepe's sentencing has been postponed. The motion for a new trial has been pending before Fischer for nearly four months.

Thom Mrozek, a spokesman for the U.S. attorney's office in Los Angeles, said prosecutors hired experts who reviewed the translations after the trial and found no substantive differences between witnesses' testimony and what the interpreters said

aloud in court. He said some of the interpretations questioned by the defense experts were done by an interpreter other than Spiratos who had no reason to put her career at risk by manipulating witnesses' testimony.

In a recent interview with The Times, Spiratos said her interpretations were unbiased.

In a hearing earlier this year, Fischer expressed concerns about the objectivity of a defense expert who was critical of interpretations by Spiratos and a fellow interpreter she brought on to help with the case. Fischer ordered prosecutors and defense attorneys to meet and attempt to reach an agreement about what discrepancies — if any — exist between the testimony and translations in order to help her decide how to proceed with the case.

The defense's new trial motion also hinted at improper conduct by one of the federal prosecutors on the case. According to the court papers, Phillips, the ICE agent, said that Assistant U.S. Atty. John Lulejian encouraged him to become involved with Spiratos. [The prosecutor and agent are not named in the court filing, but sources close to the case have confirmed their identities.]

"Wait till you see who I hired ... she is Vietnamese and is very hot," Phillips said the prosecutor told him, according to a declaration he submitted to the court.

Phillips said Lulejian twice told him he should "take care" of Spiratos, an apparent reference to having sex with her, according to court papers. Phillips added that Lulejian himself was "enamored" with Spiratos and that the prosecutor showed him photographs of her that he had on his phone.

Phillips, who is the subject of an ongoing internal investigation by ICE, declined to comment through an agency spokeswoman.

Lulejian also declined to comment for this article. According to the court papers, he said he had a "professional and platonic" relationship with Spiratos and did nothing to facilitate a romantic relationship between her and Phillips.

The issue has tainted what was once a celebrated case within the Department of Justice. The prosecution team, including Phillips and Lulejian, was given distinguished service awards last year by Atty. Gen. Eric Holder for its work on the case. The situation also seems to have angered Fischer, who refused to allow defense attorneys to file their motion under seal.

"This case received media attention — at least some of which was initiated by the government. This prosecution consumed a significant amount of public funds," the judge wrote in July. "Concealing the basis for the motion — or the ruling — would promote distrust of the judicial process."

# John Lulejian Receives the Attorney General's Award for Distinguished Service by U.S. Attorney General Eric Holder, Jr.

WASHINGTON, D.C. - On October 21, 2009, at the DAR Constitution Hall in Washington, D.C., Attorney General Eric Holder, Jr. recognized employees of the United States Department of Justice for their distinguished public service at the 57th Annual Attorney General Awards Ceremony. Among the recipients was John J. Lulejian, who received the Attorney General's Award for Distinguished Service, the Department of Justice's second highest award for employee performance.

"It is my privilege to honor these recipients for their outstanding service and commitment to our country," Attorney General Holder said. "Each of these dedicated servants has carried out the important mission of the Department of Justice and has done so with excellence and distinction. Their varied accomplishments have advanced the interests of justice on behalf of the American people, and I'm proud to call them my colleagues."

The Department of Justice honored Mr. Lulejian and his colleagues for their dedication and outstanding performance in the investigation and prosecution of Michael Joseph Pepe, a United States citizen who traveled to Cambodia and purchased young girls, ages 9 to 13 years, from their impoverished parents, then drugged, gagged, bound, beat, and raped the children over the course of ten months at his compound in Phnom Penh. Through the efforts of the prosecution team, Mr. Pepe was arrested and returned to Los Angeles for a three-week trial



John Lulejian and U.S. Attorney General Eric Holder, Jr., in D.C. on Oct. 21, 2009, where ArmenBar member Lulejian received the Dept. of Justice's second highest award for employee performance.

in the United States District Court, during which the seven non-English speaking Cambodian child victims testified through interpreters. A Los Angeles jury convicted Mr. Pepe of all seven counts of Engaging in Illicit Sexual Conduct in Foreign Places in just one and a half hours.

Mr. Lulejian is an Assistant United States Attorney with the United States Attorney's Office for the Central District of California, where he specializes in prosecuting violent and organized crime. He also was an Assistant United States Attorney in the Western District of Washington, where he prosecuted international drug trafficking and money laundering organizations in addition to persons who sexually exploited children. While he was in

Washington, Mr. Lulejian prosecuted the first American charged under a 2003 statute that made it illegal for United States citizens and permanent residents to travel to foreign countries and sexually exploit children. He has traveled to Cambodia three times for the Department of Justice.

Mr. Lulejian is a member of the Board of Governors of the Armenian Bar Association and is active in several local and national bar associations. Aside from his professional activities, he is an active member of the Western Diocese of the Armenian Church, the Knights of Vartan, and the Triple X Fraternity. He also serves as the Vice President of the Harvey Mudd College Alumni Association Board of Governors.

**John J Lulejian is an attorney in 149 cases.**

| | | | |
|---|---|---|---|
| )0-cr-00317-GAF-1 | cardo Baculanta | ed 03/28/00 | closed 09/29/00 |
| )0-cr-00317-GAF-2 | ontell Gilliard | ed 03/28/00 | closed 03/28/11 |
| )0-cr-00966-RHW-1 | ichael Tyrone Brown | ed 09/15/00 | closed 04/09/01 |
| )0-cv-03579-ABC-RC | n Gabriel Basin, et al v. erojet-General Corp | ed 04/04/00 | closed 06/02/03 |
| )0-cv-05284-ABC-RC | oper San Gabriel, et al v. erojet-General Corp, et al | ed 05/16/00 | closed 06/02/03 |
| )0-cv-07042-ABC-RC | n Gabriel Basin v. Aerojet- eneral Corp, et al | ed 06/28/00 | closed 06/02/03 |
| )0-cv-10891-NM-CWX | ovad Communications v. Bell lantic Corp | ed 10/12/00 | closed 12/05/01 |
| )1-cv-05578-FMC-EX | elivery Zone LLC v. Zone rfect Fresh, et al | ed 06/25/01 | closed 05/10/02 |
| )1-cv-08569-NM-RC | zzler USA v. Hyon H Kim, et al | ed 10/03/01 | closed 04/16/02 |
| )1-cv-08570-NM-RC | zzler USA v. Seaman Outlet c, et al | ed 10/03/01 | closed 06/27/02 |
| )2-cr-00215-CAS-1 | nthony Walker Sowell | ed 03/05/02 | closed 12/11/03 |
| )2-cv-03112-NM-FMO | gle Truck Lines v. GoAmerica c, et al | ed 04/15/02 | closed 11/08/02 |
| )2-cv-05194-PA-RC | rectv Inc v. Greg A Fischer, et | ed 04/02/01 | closed 08/06/03 |

| | | | |
|---|---|---|---|
| )3-cr-00087-GHK-1 | chard Seamans | ed 01/30/03 | closed 07/01/04 |
| )4-cr-00732-RSWL-1 | ly Maxwell | ed 06/17/04 | closed 05/05/08 |
| )4-cr-00732-RSWL-2 | erbert Irwin Moore | ed 06/17/04 | closed 03/20/08 |
| )4-cr-00732-RSWL-3 | leresa Hall | ed 06/17/04 | closed 02/20/08 |
| )4-cr-00732-RSWL-4 | dric Farmer | ed 06/17/04 | closed 05/13/08 |
| )4-cr-00732-RSWL-5 | arles Allen Moore, Jr | ed 06/17/04 | closed 10/30/07 |
| )4-cr-00732-RSWL-6 | nise Ann Fowler | ed 06/17/04 | closed 05/26/09 |
| )4-cr-00732-RSWL-7 | lei Toafitu Gago | ed 06/17/04 | closed 05/05/08 |
| )4-cr-00732-RSWL-8 | illiam Alton Traylor | ed 06/17/04 | closed 11/06/07 |
| )4-cr-00732-RSWL-9 | rrence Pruitt | ed 06/17/04 | closed 08/01/06 |
| )4-cr-00732-RSWL-10 | nean Martin | ed 06/17/04 | closed 10/09/09 |
| )4-cr-00732-RSWL-11 | murl Scott | ed 06/17/04 | closed 11/07/05 |
| )4-cr-00732-RSWL-12 | rl Childs | ed 06/17/04 | closed 01/15/08 |
| )4-cr-00732-RSWL-13 | andon Neal | ed 06/17/04 | closed 03/13/06 |
| )4-cr-00732-RSWL-14 | las Glenn Brownridge | ed 06/17/04 | closed 12/05/05 |
| )4-cr-00732-RSWL-15 | eisha Fowler | ed 06/17/04 | closed 12/13/07 |
| )7-cr-00168-DSF-1 | ichael Joseph Pepe | ed 03/08/07 | closed 02/28/14 |
| )7-cr-00852-FMC-1 | se Enrique Limon-Gutierrez | ed 08/24/07 | closed 11/06/07 |
| )7-cr-00889-CAS-1 | aurice Huezo-Cardoza | ed 08/31/07 | closed 04/09/08 |
| )7-cr-01048-VBF-1 | mes Lanzo Turner, IV | ed 09/26/07 | closed 06/10/09 |
| )7-cr-01048-VBF-2 | wid Cole, Jr | ed 09/26/07 | closed 07/24/09 |
| )7-cr-01048-VBF-3 | arles Leroy Twyman | ed 09/26/07 | closed 05/23/12 |
| )7-cr-01048-VBF-4 | shawn Andrea Lynch | ed 09/26/07 | closed 06/12/09 |
| )7-cr-01048-VBF-5 | ike LNU | ed 09/26/07 | |

| | | | |
|---|---|---|---|
| )7-cr-01049-ABC-1 | 1arles Leroy Twyman | ed 09/26/07 | closed 05/23/12 |
| )7-cr-01049-ABC-2 | :nneth B Riley | ed 09/26/07 | closed 02/21/12 |
| )7-cr-01075-VBF-1 | :nneth B Riley | ed 09/27/07 | closed 03/19/12 |
| )7-cr-01141-VBF-1 | :nneth B Riley | ed 10/10/07 | closed 03/19/12 |
| )7-cr-01141-VBF-2 | seph Carter | ed 10/10/07 | closed 01/05/09 |
| )7-cr-01141-VBF-3 | vie | ed 10/10/07 | |
| )7-cr-01142-VBF-1 | 1arles Leroy Twyman | ed 10/10/07 | closed 05/23/12 |
| )7-cr-01142-VBF-2 | :rald Plaze Thomas | ed 10/10/07 | closed 02/18/09 |
| )7-cr-01142-VBf-3 | 1thony Quin Wheeler | ed 10/10/07 | closed 05/08/09 |
| )7-cr-01142-VBF-4 | 1thony Dewayne Twyman | ed 10/10/07 | closed 11/23/09 |
| )7-cr-01142-VBF-5 | ichael Lynn Twyman | ed 10/10/07 | closed 11/11/09 |
| )7-cr-01143-VBF-1 | 1arles Leroy Twyman | ed 10/10/07 | closed 05/23/12 |
| )7-cr-01143-VBF-2 | :bra Ann Johnson | ed 10/10/07 | closed 06/09/09 |
| )7-cr-01162-VBF-1 | 1thony Dewayne Twyman | ed 10/17/07 | closed 11/23/09 |
| )7-cr-01163-ABC-1 | 1arles Leroy Twyman | ed 10/17/07 | closed 05/23/12 |
| )7-cr-01221-GHK-1 | anley Dan Reczko, III | ed 11/02/07 | closed 05/21/15 |
| )7-cr-01222-SVW-1 | 1rmel A. Tello | ed 11/02/07 | closed 12/12/08 |
| )7-cr-01255-GHK-1 | :nes Edward Fields, Jr | ed 11/07/07 | closed 11/07/07 |
| )7-mj-01520-DUTY-1 | anley Dan Reczko, III | ed 09/12/07 | closed 11/02/07 |
| )8-cr-00807-R-1 | an Ramon Ventura-Martinez | ed 07/11/08 | closed 11/10/08 |

| )8-cr-00834-R-1 | ancisco Gerardo Alcala | ed 07/17/08 | closed 04/01/09 |
| )8-cr-00834-R-2 | ıristina Pauline Valdez | ed 07/17/08 | closed 03/31/09 |
| )8-cr-00836-ABC-1 | ıniel Valdez | ed 07/17/08 | closed 10/21/10 |
| )8-cr-00836-ABC-2 | sse Anthony Nunez | ed 07/17/08 | closed 08/19/09 |
| )8-cr-00836-ABC-3 | ael Sanchez | ed 07/17/08 | closed 05/22/12 |
| )8-cr-00961-VBF-1 | sar Raul Castillo | ed 08/13/08 | closed 09/16/10 |
| )8-cr-00961-VBF-2 | ldie Joseph Ward | ed 08/13/08 | closed 08/29/11 |
| )8-cr-00962-SJO-1 | ntina Marie Rea | ed 08/13/08 | closed 06/29/09 |
| )8-cr-00962-SJO-2 | ıristoval Pena | ed 08/13/08 | closed 07/06/09 |
| )8-cr-00963-VBF-1 | ıpert Nicholas Rodriguez, Jr | ed 08/13/08 | closed 12/08/09 |
| )8-cr-00964-ODW-1 | e Anthony Ward | ed 08/13/08 | closed 02/01/10 |
| )8-cr-00964-ODW-2 | ncent Nathaniel Beltran | ed 08/13/08 | closed 10/05/09 |
| )8-cr-01062-ODW-1 | ny Josette Garcia Estrada | ed 09/09/08 | closed 08/10/09 |
| )8-cr-01358-CAS-1 | ıthony Walker Sowell | ed 11/18/08 | closed 03/30/11 |
| )8-cr-01445-MMM-1 | lipe De Jesus Delgadillo-ayorga | ed 12/16/08 | closed 12/23/09 |
| )8-cv-06431-SVW | ited States of America v. James ıuglas Pridgen | ed 09/30/08 | closed 04/19/10 |
| )9-cr-00094-R-1 | scar Ceballos | ed 01/30/09 | closed 09/29/09 |
| )9-cr-00094-R-2 | ıvid Zavala | ed 01/30/09 | closed 12/14/09 |

| )9-cr-00291-R-1 | sus Andres Trujillo | ed 03/26/09 | closed 12/01/09 |
|---|---|---|---|
| )9-cr-00506-PSG-1 | :ob Padilla | ed 05/26/09 | closed 05/20/10 |
| )9-mj-00198-DUTY-1 | :ob Padilla | ed 02/02/09 | closed 05/26/09 |
| l0-cr-00120-CAS-1 | :nneth Ray Thomas | ed 02/05/10 | closed 06/06/11 |
| l0-cr-00120-CAS-2 | iron Trayvon Griffin | ed 02/05/10 | closed 11/30/10 |
| l0-cr-00120-CAS-3 | ian Miramontes | ed 02/05/10 | closed 03/28/11 |
| l0-cr-00284-ODW-1 | atthew James Higgins | ed 03/19/10 | |
| l0-cr-00284-ODW-2 | :emy Robert Edwards | ed 03/19/10 | closed 01/25/12 |
| l0-cr-00284-ODW-3 | ian Alexander Edwards | ed 03/19/10 | |
| l0-cr-00284-ODW-4 | :egg Thomas Gay | ed 03/19/10 | closed 11/21/11 |
| l0-cr-00284-ODW-5 | :rnan Osvaldo Veloso | ed 03/19/10 | |
| l0-cr-00284-ODW-6 | :vin Joseph Fersch | ed 03/19/10 | |
| l0-cr-00284-ODW-7 | :rek Matsui | ed 03/19/10 | |
| l0-cr-00284-ODW-8 | irt Patrick Danner | ed 03/19/10 | closed 05/01/12 |
| l0-cr-00284-ODW-9 | alther Edgardo Orellan Aguilar | ed 03/19/10 | closed 12/23/15 |
| l0-cr-00284-ODW-10 | sus Javier Gonzalez | ed 03/19/10 | |
| l0-cr-00284-ODW-11 | ira Chhay | ed 03/19/10 | closed 06/11/12 |
| l0-cr-00284-ODW-12 | aig John Breakey | ed 03/19/10 | |
| l0-cr-00284-ODW-13 | ieen Autumn Sandvig | ed 03/19/10 | |
| l0-cr-00720-GHK-1 | icelmo I. Rodriguez Castaneda | ed 07/01/10 | closed 08/04/11 |
| l0-cr-01075-GAF-1 | rid Taghizadeh | ed 09/24/10 | closed 04/25/11 |
| l0-cr-01087-DDP-1 | ichael Allen Shaw | ed 09/28/10 | closed 11/07/11 |

| | | | |
|---|---|---|---|
| l0-cr-01140-ODW-1 | ıdy Soto | ed 10/14/10 | closed 09/09/13 |
| l0-cr-01140-ODW-2 | in Nicole Fisher | ed 10/14/10 | closed 03/03/14 |
| l0-cr-01326-DMG-1 | hn Dominick | ed 12/10/10 | closed 07/18/13 |
| l0-cr-01326-DMG-2 | nathan Jacob Waldron | ed 12/10/10 | closed 04/17/15 |
| l0-cr-01326-DMG-3 | mydas Krishnamoorthy | ed 12/10/10 | closed 01/31/13 |
| l0-cv-06568-MMM | ıbert Eugene Dixon v. Arcola ashington-Adduci | ed 09/02/10 | closed 05/23/13 |
| l1-cr-00355-DSF-1 | lvester Ivan Payne | ed 04/21/11 | closed 06/25/12 |
| l1-cr-00357-RGK-1 | ichael Jerome Lawrence, Jr. | ed 04/21/11 | closed 01/15/14 |
| l1-cr-00358-MMM-1 | ıey Jacque Carter | ed 04/21/11 | closed 04/10/13 |
| l1-cr-00359-JFW-1 | an Correll Sims | ed 04/21/11 | closed 09/26/11 |
| l1-cr-00360-JHN-1 | ilo Koshawn Perkins | ed 04/21/11 | closed 03/12/12 |
| l1-cr-00362-MMM-1 | ıance Lorane Willis | ed 04/21/11 | closed 05/24/12 |
| l1-cr-00362-MMM-2 | se Desiderio Gaitan | ed 04/21/11 | closed 08/24/12 |
| l1-cr-00363-MMM-1 | .wrence Isaac Cooks, Jr | ed 04/21/11 | closed 08/24/12 |
| l1-cr-00407-RGK-1 | ırman Paul Reed | ed 05/05/11 | |
| l1-cr-00407-RGK-2 | ıdrew Joseph McMillian | ed 05/05/11 | closed 01/30/12 |
| l1-cr-00408-GHK-1 | mya Wilson | ed 05/05/11 | closed 08/08/12 |
| l1-cr-00409-GW-1 | ınneth Richard Bell | ed 05/05/11 | closed 02/29/12 |

| 11-cr-00410-PSG-1 | arles Ray Moore, JR | ed 05/05/11 | closed 07/18/12 |
|---|---|---|---|
| 11-cr-00410-PSG-2 | ana Renee Baudoin | ed 05/05/11 | closed 05/08/12 |
| 11-cr-00429-MMM-1 | vid Andrew Winzer | ed 05/12/11 | closed 10/11/13 |
| 11-cr-00430-DSF-1 | ristopher Earl Patterson, SR | ed 05/12/11 | closed 03/26/12 |
| 11-cr-00430-DSF-2 | dney Deward Bourgeois | ed 05/12/11 | closed 03/05/12 |
| 11-cr-00440-SJO-1 | dolph Valentino Cotton | ed 05/17/11 | closed 02/27/12 |
| 11-cr-00440-SJO-2 | es Touche Bradshaw | ed 05/17/11 | closed 01/11/12 |
| 11-cr-00441-SJO-1 | ctor Alex Garcia | ed 05/17/11 | closed 12/27/11 |
| 11-cr-00441-SJO-2 | rge Hernandez-Calderon | ed 05/17/11 | |
| 11-cv-09892-RSWL | ian J McLucas v. United States America | ed 11/30/11 | closed 07/23/12 |
| 12-cr-00521-MWF-1 | ctor Manuel Salgado-Diaz | ed 05/31/12 | closed 03/27/13 |
| 12-cr-00955-SJO-1 | eddie Montoya | ed 09/29/12 | closed 11/26/12 |
| 12-cv-02773-CAS | thony Walker Sowell v. United ates of America | ed 03/30/12 | closed 05/10/12 |
| 12-cv-03138-CAS | thony Walker Sowell v. United ates of America | ed 04/10/12 | closed 12/27/12 |
| 96-cv-00116-CBM-AJWX | Amir Ali v. CSUN, et al | ed 01/08/96 | closed 06/21/02 |
| 98-cr-00025-R-1 | thony O'Neil Smith | ed 01/09/98 | closed 07/27/98 |
| 98-cr-00025-R-2 | ryl Emil Hildreth | ed 01/09/98 | closed 07/31/98 |

| | | | |
|---|---|---|---|
| )8-cr-00025-R-3 | arcus Devell Menefield | ed 01/09/98 | closed 07/27/98 |
| )8-cr-00043-SVW-1 | vid Daniel Thomas Wilkerson | ed 01/20/98 | closed 08/04/98 |
| )8-cr-00043-SVW-2 | rrell Lane McClain | ed 01/20/98 | closed 08/04/98 |
| )8-cr-00043-SVW-3 | nes Douglas Pridgen | ed 01/20/98 | closed 09/16/99 |
| )8-cr-01310-ABC-1 | endell Anthony Moseley | ed 12/29/98 | closed 05/15/00 |
| )8-cv-06485-WMB-SH | vid M Evans, et al v. Royal tomobile, et al | ed 08/10/98 | closed 04/27/99 |
| )9-cr-01168-RSWL-1 | ian McLucas | ed 11/18/99 | closed 11/18/99 |
| )9-cr-01168-RSWL-2 | vron Townsend | ed 11/18/99 | closed 01/08/01 |
| )9-cr-01168-RSWL-3 | berto Gomez | ed 11/18/99 | |
| )9-cr-01168-RSWL-4 | sus Arredondo Quintero | ed 11/18/99 | |
| )9-cr-01168-RSWL-5 | n Barnes | ed 11/18/99 | closed 10/29/03 |
| )9-cr-01168-RSWL-6 | line Barnes | ed 11/18/99 | closed 07/31/00 |
| )9-cr-01168-RSWL-7 | ye McGrew | ed 11/18/99 | closed 09/11/00 |
| )9-cr-01168-RSWL-8 | mberly Louden | ed 11/18/99 | closed 07/31/00 |
| )9-cr-01168-RSWL-9 | rnelle Dwayne Powns | ed 11/18/99 | closed 09/25/00 |
| )9-cv-12606-DT-BQR | Cellular Invst Co v. Airtouch llular, et al | ed 12/01/99 | closed 06/28/00 |
| )1-cv-00370-DOC-RC | rectv Inc v. Greg A Fischer, et | ed 04/02/01 | closed 06/28/02 |