No. 14-50095

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

MICHAEL JOSEPH PEPE,
*Defendant-Appellant.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. CR 07-168-DSF*

## GOVERNMENT'S PETITION FOR PANEL REHEARING
## AND/OR REHEARING EN BANC
### (Decided July 11, 2018—Kleinfeld, *Nguyen*; Thomas (dissenting))

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

BRAM M. ALDEN
NANCY B. SPIEGEL
Assistant United States Attorneys
Criminal Appeals Section

312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-3898
Email: bram.alden@usdoj.gov

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**DESCRIPTION** **PAGE**

I     INTRODUCTION............................................................1

II    BACKGROUND ..........................................................3

    A.   Defendant's Crimes, Convictions, and Sentence...................3

    B.   Statutory Background...........................................4

III   REHEARING IS WARRANTED......................................7

    A.   The Panel Majority Impermissibly Overruled
        Precedent.........................................................8

        1.   The 2013 Amendment Extended Clark's Effect
            Nationwide ................................................8

        2.   The 2013 Amendment Expanded the Statute in
            This Circuit ...............................................12

    B.   The Panel Majority Misinterpreted the Statute,
        Turning Congressional Intent On Its Head .......................14

        1.   The 2013 Amendment Did Not Alter the Plain
            Language of the Statute ..............................14

        2.   Legislative History Contravenes the Panel
            Majority's Decision.....................................17

    C.   Rehearing Is Necessary Because This Case
        Impermissibly Overrules Precedent and Presents
        Questions of Exceptional Importance................................19

IV    CONCLUSION .............................................................23

# TABLE OF AUTHORITIES

**DESCRIPTION**                                                    **PAGE(S)**

## Federal Cases

*Almendarez-Torres v. United States*,
    523 U.S. 224 (1998) ............................................................ 17

*Bruesewitz v. Wyeth LLC*,
    562 U.S. 223 (2011) ...................................................... 17, 18

*Close v. Sotheby's Inc.*,
    894 F.3d 1061 (9th Cir. 2018) ................................. 8, 11, 14

*Fernandez-Vargas v. Gonzales*,
    548 U.S. 30 (2006) .............................................................. 11

*Frank v. United States*,
    2012 WL 13072044 (S.D. Fla. Jan. 23, 2012) ................................. 10

*FTC v. AT&T Mobility LLC*,
    883 F.3d 848 (9th Cir. 2018) (en banc) ...................................... 17, 18

*Kasten v. Saint-Gobain Performance Plastics Co.*,
    563 U.S. 1 (2011) .............................................................. 19

*Lamar, Archer & Cofrin, LLP v. Appling*,
    138 S. Ct. 1752 (2018) ...................................................... 15

*Landreth v. Comm'r*,
    859 F.2d 643 (9th Cir. 1988) ................................................ 16

*Negrete-Ramirez v. Holder*,
    741 F.3d 1047 (9th Cir. 2014) .............................................. 13

*Olive v. C.I.R.*,
    792 F.3d 1146 (9th Cir. 2015) .............................................. 17

*Or. Coast Scenic RR, LLC v. Or. Dep't of State Lands*,
    841 F.3d 1069 (9th Cir. 2016) .............................................. 11

*Schriro v. Summerlin*,
    542 U.S. 348 (2004) .......................................................... 20

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION** **PAGE(S)**

*United States v. Al-Maliki,*
   787 F.3d 784 (6th Cir. 2015) ....................................................... 21, 22

*United States v. Bighead,*
   128 F.3d 1329 (9th Cir. 1997) ......................................................... 21

*United States v. Bollinger,*
   798 F.3d 201 (4th Cir. 2015) ........................................................... 10

*United States v. Clark,*
   435 F.3d 1100 (9th Cir. 2006) ................................................... *passim*

*United States v. Frank,*
   599 F.3d 1221 (11th Cir. 2010) ................................................... 9, 22

*United States v. Gonzalez-Torres,*
   309 F.3d 594 (9th Cir. 2002) ........................................................... 17

*United States v. Husted,*
   545 F.3d 1240 (10th Cir. 2008) ....................................................... 13

*United States v. Jackson,*
   480 F.3d 1014 (9th Cir. 2007) ................................................... *passim*

*United States v. McGuire,*
   627 F.3d 622 (7th Cir. 2010) ............................................................. 9

*United States v. Pendleton,*
   658 F.3d 299 (3d Cir. 2011) ......................................................... 9, 22

*United States v. Pepe,*
   895 F.3d 679 (9th Cir. 2018) ..................................................... *passim*

*United States v. Reed,*
   2017 WL 3208458 (D.D.C. Jul. 27, 2017) ....................................... 21

*United States v. Schmidt,*
   845 F.3d 153 (4th Cir. 2017) ........................................................... 10

*United States v. Stokes,*
   726 F.3d 880 (7th Cir. 2013) ........................................................... 13

ii

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                            **PAGE(S)**

*United States v. Winkles,*
    795 F.3d 1134 (9th Cir. 2015) .......................................... 15

*Vartelas v. Holder,*
    566 U.S. 257 (2012) ...................................................... 16

*Weingarten v. United States,*
    865 F.3d 48 (2d Cir. 2017) .............................................. 21

*Zazueta-Carrillo v. Ashcroft,*
    322 F.3d 1166 (9th Cir. 2003) ......................................... 17

## Federal Statutes

8 U.S.C. § 1154 ...................................................... 13

8 U.S.C. § 1401 ...................................................... 12

18 U.S.C. § 2423 ................................................ *passim*

18 U.S.C. § 3299 ...................................................... 20

## Federal Rules

Fed. R. App. P. 35 .............................................. 3, 19

iii

No. 14-50095

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

MICHAEL JOSEPH PEPE,
*Defendant-Appellant.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. CR 07-168-DSF*

## GOVERNMENT'S PETITION FOR PANEL REHEARING
## AND/OR REHEARING EN BANC

# I

# INTRODUCTION

"Michael Pepe, a U.S. citizen, drugged and raped seven children in Cambodia, where he claims to have resided for several years." *United States v. Pepe*, 895 F.3d 679, 681 (9th Cir. 2018). For his crimes, he was sentenced to 210 years' imprisonment. The 2-1 panel opinion vacated his convictions and sentence. *Id.* at 681-82. In so doing, the panel majority impermissibly overruled *United States v. Clark*, 435

F.3d 1100 (9th Cir. 2006), and incorrectly reinterpreted defendant's statute of conviction, 18 U.S.C. § 2423(c).

Section 2423(c) authorizes prosecution of any American citizen or permanent resident who "travels in foreign commerce" "and engages in any illicit sexual conduct." *Id*. *Clark* correctly held that the statute "does not require that the conduct occur *while* traveling." *Clark*, 435 F.3d at 1107. The panel majority overruled *Clark*, holding that unless defendant was "still traveling," his child-rape convictions cannot stand. *Pepe*, 895 F.3d at 687, 692. The majority believed that a 2013 amendment compelled its decision—an amendment that made no change to the provision *Clark* interpreted and merely added a clause that expressly authorizes the prosecution of defendants who "reside[], either temporarily or permanently, in a foreign country." 18 U.S.C. § 2423(c) (2014); *Pepe*, 895 F.3d at 686-87. In other words, the majority based its narrowing construction on an amendment intended to *broaden* the statute. *Id*. at 686.

That result is inconsistent with law and logic. As Chief Judge Thomas explained in dissent, the majority deployed purported congressional intent to accomplish the exact result Congress sought to

2

foreclose. *Id.* at 693-95 (Thomas, C.J., dissenting). When it passed the 2013 amendment—reenacting the same language *Clark* construed—Congress is presumed to have endorsed this Court's interpretation, not supplanted it. *Id.*

Rehearing is necessary because the panel overlooked or misapprehended the law, impermissibly overruled Circuit precedent, erroneously decided questions of exceptional importance, and created a circuit split. Fed. R. App. P. 35(a). Unless corrected, the panel's mistakes threaten to invalidate convictions and impede prosecutions of defendants guilty of reprehensible crimes against children.

## II

## BACKGROUND

### A.   Defendant's Crimes, Convictions, and Sentence

Defendant, a United States citizen, flew from California to Cambodia in 2005. (Excerpts of Record ("ER") 1332-33.) In Cambodia, defendant paid a prostitute to bring young girls, aged 10-12, to his house. (ER 2078-90.) He requested "girls that have a small build"—"skinny, weak," and without pubic hair. (ER 2091-92.) Defendant negotiated "[t]he price for him to buy [each] girl's virginity." (ER 2088.)

And then he took it brutally. He tied girls to a bed using rope and cloth strips. He raped them. Slapped them. Gagged or smothered them to muffle their screams. (ER 778-80, 908-10, 948-52, 2086-89, 2098-2102.) Some, he drugged. (ER 778-80, 820-22, 948, 1015-16.) They woke up bloody and disfigured, in pain and "despair." (ER 498-504, 520, 525, 779-80, 821, 951-52, 955.) Defendant gave them money or gifts. (ER 785-86, 960-61, 1015-17, 2085-2088.) For oral sex, he gave them a dollar. (ER 960, 1015-17.)

In December 2007, defendant was charged in a seven-count superseding indictment with violating 18 U.S.C. § 2423(c) by traveling in foreign commerce and engaging in illicit sexual conduct. (ER 372-73.) Each count corresponded to one of the girls defendant raped. (*Id.*) Following a 13-day trial, the jury returned across-the-board guilty verdicts. (ER 2480-87.) The district court sentenced defendant to 210 years' imprisonment—30 years per count. (ER 2006-11, 2033-2047.)

## B.  Statutory Background

For over two decades, Congress has sought to punish Americans who, like defendant, prey on children abroad. In 1994, Congress "prohibited international travel by American citizens 'for the purpose of

engaging' in sex with minors." *United States v. Jackson*, 480 F.3d 1014, 1016 (9th Cir. 2007) (quoting 18 U.S.C. § 2423(b)).  That law proved to be ineffective; it was too difficult to establish that "travelers intended to engage in sexual misconduct with children at the time they left the United States." *Pepe*, 895 F.3d at 683-84.

In 2003, Congress added § 2423(c) as part of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (the "PROTECT Act").  *Jackson*, 480 F.3d at 1016-17.  From 2003 to 2013, the law provided:

> Any United States citizen or alien admitted for permanent residence who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423(c) (2012).  "Illicit sexual conduct" includes child rape and any commercial sex act with a minor.  18 U.S.C. § 2423(f).

*Clark* carefully analyzed § 2423(c).  The defendant in that case "primarily resided in Cambodia" for five years, engaged in illicit sex with underage boys, and was extradited in 2003.  *Clark*, 435 F.3d at 1103.  This Court rejected his constitutional and statutory challenges to § 2423(c).  *Id.* at 1105-17.  The statute was "plain on its face" and did

5

"not require that the [illicit sexual] conduct occur *while* traveling in foreign commerce." *Id.* at 1107. Rather, the statute applied if "the defendant traveled in foreign commerce" and then "engage[d] in any illicit sexual conduct." *Id.* at 1105 (punctuation omitted). As this Court confirmed the following year, "*Clark* quite explicitly treats the travel and illicit sex components of the statute as distinct elements of the crime"; thus, a child predator would "violate § 2423(c) even if he stops traveling before he engages in illicit sex." *Jackson*, 480 F.3d at 1017.[1]

In 2013, Congress amended § 2423(c). The only change was the addition of the italicized language:

> Any United States citizen or alien admitted for permanent residence who travels in foreign commerce *or resides, either temporarily or permanently, in a foreign country*, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423(c) (2014) (emphasis added). Thus, a child predator may now be convicted if he either "travels in foreign commerce" (the

---

[1] The Court left open the outer constitutional limit of congressional authority to regulate illicit sexual conduct of American citizens residing abroad. *Jackson*, 480 F.3d at 1017 n.6; *Clark*, 435 F.3d at 1107 n.11.

"travels-in" clause) or "resides, either temporarily or permanently, in a foreign country" (the "resides-in" clause).

## III

## REHEARING IS WARRANTED

The panel majority held that Congress's amendment of § 2423(c) "effectively overruled" *Clark*. *Pepe*, 895 F.3d at 686. That holding suffers from two fatal defects.

First, it contravenes the rule that a three-judge panel is bound by Circuit precedent except in the rare instance that it is "clearly irreconcilable" with intervening higher authority. Contrary to the majority's conclusion, the 2013 amendment is definitively reconcilable with *Clark*; indeed, the 2013 amendment was designed to foreclose the very argument *Clark* rejected.

Second, the decision misinterprets § 2423(c). By adding the resides-in clause, Congress made no change whatsoever to the travels-in clause *Clark* interpreted. Broadening a statute does not narrow its predecessor, and the legislative history does not reveal any intent to repudiate *Clark* or restrict the scope of the travels-in offense. The panel decision effectively punishes Congress, accomplishing precisely the

7

result Congress sought to prevent. In the name of congressional intent, the panel majority eviscerates it.

## A.   The Panel Majority Impermissibly Overruled Precedent

A prior decision may not be deemed "effectively overruled" unless "intervening higher authority has 'so undercut the theory or reasoning underlying the prior circuit precedent' as to make the precedent 'clearly irreconcilable' with the intervening authority." *Close v. Sotheby's Inc.*, 894 F.3d 1061, 1072-73 (9th Cir. 2018). "The clearly irreconcilable requirement is a high standard." *Id.* at 1073. Mere tension or doubt is insufficient. *Id.* "Nothing short of 'clear irreconcilability' will do." *Id.*

### 1.   *The 2013 Amendment Extended* Clark's *Effect Nationwide*

The panel majority believed that it had to overrule *Clark* to give effect to the 2013 amendment. *Pepe*, 895 F.3d at 686. That was wrong. The most logical interpretation of the 2013 amendment was that Congress intended to extend *Clark*'s effect nationwide  The addition of the resides-in clause assured that all child predators could be prosecuted, even if any other circuit were to disagree with *Clark* and construe the travels-in clause to require proof that a defendant was still traveling at the time of the illicit sex.

8

That change was necessary. Before 2013, this was the only Circuit squarely to have held that illicit sexual conduct did not have to occur during a defendant's travel. *Jackson*, 480 F.3d at 1017; *Clark*, 435 F.3d at 1107-08, 1114. Without analyzing the issue, two other circuits appeared to concur. *See United States v. Pendleton*, 658 F.3d 299, 304 (3d Cir. 2011) (enumerating travel and sex-act elements separately); *United States v. Frank*, 599 F.3d 1221, 1239 (11th Cir. 2010) (no plain error in imposing multiple sentences for exploitating three minors during a single trip because "§ 2423(c) punishes both traveling *and* engaging in illicit sexual conduct").

But at least one other circuit appeared to disagree. In *United States v. McGuire*, 627 F.3d 622 (7th Cir. 2010), the Seventh Circuit wrote that "Section 2423(c) was added to punish persons who travel in foreign commerce and have sex with a minor *in the course of the trip*." *Id.* at 624 (emphasis added); *see also id.* (opining that the defendant would have violated § 2423(c) if he "had molested [the victim] on their travels"). The Seventh Circuit's dicta revealed that other circuits might not adopt *Clark*'s interpretation of § 2423(c). Indeed, when the Fourth Circuit later analyzed the pre-amendment statute, it construed "travel"

9

more broadly and affirmed a conviction not because the travel and sex-act elements were distinct but because the defendant "was still traveling" when he raped young Cambodian boys. *United States v. Schmidt*, 845 F.3d 153, 156-59 (4th Cir. 2017); *but see United States v. Bollinger*, 798 F.3d 201, 203 (4th Cir. 2015) (affirming conviction of defendant who molested children five years after traveling to Haiti).

Meanwhile, defendants argued that they could not be prosecuted under the travels-in clause because they had "relocated" or "resettled" abroad. *See, e.g.*, *Schmidt*, 845 F.3d at 155-57; *Frank v. United States*, 2012 WL 13072044, at *18 (S.D. Fla. Jan. 23, 2012) (describing claim that offender had "traveled to Cambodia with the intent to . . . relocate there").

Thus, when Congress passed the 2013 amendment, there was some dispute as to whether the travels-in clause extended to defendants who had relocated abroad. By adding the resides-in clause, Congress ensured that predators could not escape criminal liability *in circuits that declined to follow Clark*. That did not mean that Congress intended to repudiate *Clark* or narrow the travels-in clause. Congress may have agreed with *Clark* about the breadth of the travels-in clause

but added the resides-in clause to ensure that child predators could continue to be prosecuted even in those jurisdictions that might interpret the travels-in clause more narrowly. Indeed, it is perversely illogical to conclude that Congress sought to *narrow* the scope of the statute by *closing* any possible loopholes. *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 40 (2006) (where amendment was "obviously" designed to expand statute's scope, "it would make no sense" to interpret it to remove a class of persons from its reach); *Or. Coast Scenic RR, LLC v. Or. Dep't of State Lands*, 841 F.3d 1069, 1074 (9th Cir. 2016) ("[S]tatutory interpretations which would produce absurd results are to be avoided[.]").

More to the point, the conclusion that Congress intended to narrow the travels-in clause is not *compelled*. Because it was surely "possible," *Pepe*, 895 F.3d at 688, that Congress intended to foreclose the very argument that *Clark* rejected, the panel majority violated the "clear irreconcilability" standard for overruling Circuit precedent.[2] *Close*, 894 F.3d at 1073-74.

---

[2] The panel majority's tortured analysis of the word "and," *Pepe*, 895 F.3d at 686-87, was also not compelled. The statute requires that a

### 2. *The 2013 Amendment Expanded the Statute in This Circuit*

Even in this Circuit, the 2013 amendment expanded the statute consistent with *Clark*. At least three groups of offenders were not subject to prosecution under § 2423(c) until 2013: (1) United States citizens born and consistently living abroad, (2) aliens lawfully admitted for permanent residence prior to emigrating, and (3) citizens and permanent residents who left the United States before 2003.

The first group was comprised of offenders born to American expatriates. The children of expatriates acquire citizenship at birth, *see* 8 U.S.C. § 1401, and would not fall within the ambit of the travels-in clause unless and until they traveled to and from the United States. *Clark*, 435 F.3d at 1102, 1103 (a defendant "travels in 'foreign commerce'" when he goes "to a foreign country"). Those individuals

---

defendant (1) be either a United States citizen or alien admitted for permanent residence; (2) either travel in foreign commerce or reside in a foreign country; "and" (3) engage in any illicit sexual conduct. 18 U.S.C. § 2423(c). "And" does not impose an order of succession; it merely reflects that the elements are distinct. Under *Clark*, a travels-in prosecution may rest on conduct occurring during *or* after the travel. 435 F.3d at 1107-08 (§ 2423(c) is not limited to sex offenses occurring in transit). To hold otherwise, the panel majority mischaracterizes *Clark*. *See Pepe*, 895 F.3d at 686-87.

could be prosecuted under the resides-in clause. That the class of such persons might be small, *see Pepe*, 895 F.3d at 686, is not a basis to ignore that the 2013 amendment rendered them subject to prosecution.

The second group likely was significantly larger. The resides-in clause extends to every "alien admitted for permanent residence." 18 U.S.C. § 2423(c). Aliens, including immediate family members of citizens, can be admitted for permanent residence before setting foot in the United States. *See* 8 U.S.C. § 1154; *Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1053-54 (9th Cir. 2014). Any such individual who engages in illicit sexual conduct prior to emigrating would be subject to prosecution under only the resides-in clause.

The third group exists as a result of *Jackson*'s holding that an individual who traveled from the United States to a foreign country before 2003 could not be prosecuted under the travels-in clause. 480 F.3d at 1018-21; *accord United States v. Stokes*, 726 F.3d 880, 888 (7th Cir. 2013); *United States v. Husted*, 545 F.3d 1240, 1244 (10th Cir. 2008). The resides-in clause, by contrast, would permit prosecution of individuals, like the defendant in *Jackson*, who last traveled from the United States to a foreign nation before 2003.

13

Because the 2013 amendment expanded the statute even in circuits that interpreted the travels-in clause broadly, that independently demonstrates that the "clear irreconcilability" standard was not satisfied.  *See Close*, 894 F.3d at 1073-74.

## B.  The Panel Majority Misinterpreted the Statute, Turning Congressional Intent On Its Head

The panel majority's interpretation of § 2423(c) was also wrong.

### 1.  *The 2013 Amendment Did Not Alter the Plain Language of the Statute*

The plain language of the statute "does not require that the [illicit sexual] conduct occur *while* traveling in foreign commerce." *Clark*, 435 F.3d at 1107; *accord Jackson*, 480 F.3d at 1023 ("[T]he illicit sex act does not need to take place *during* the course of travel[.]").  Rather, there are two separate elements: (1) travel and (2) illicit sexual conduct. *Clark*, 435 F.3d at 1107, 1114.  Before 2013, the elements were distinct, and split by a comma to designate their separation: the statute applied to any offender "who travels in foreign commerce, and engages in any illicit sexual conduct."  18 U.S.C. § 2423(c) (2012).  No temporal nexus was required.  An offender's intent to relocate abroad was not a defense. That made sense.  As the facts of this case demonstrate, sexual abuse of

children often occurs after a perpetrator has time to develop contacts with a local network, which, in turn, identifies underage victims.

Nothing about the 2013 amendment changed the structure or scope of the travels-in clause. The amended statute did not link the travel and sex-act elements with the word "while" or "during." Indeed, Congress did not alter one word of the original statute. Just as before, the travels-in clause applies to any offender "who travels in foreign commerce . . . , and engages in any illicit sexual conduct." 18 U.S.C. § 2423(c). Congress chose *not* to change the travels-in offense.

The verbatim reenactment of the travels-in clause refutes the majority's interpretation of the 2013 amendment. "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1762 (2018); *see also Pepe*, 895 F.3d at 692 (Thomas, C.J., dissenting). That rule applies equally when Congress "adopts a new law incorporating sections of a prior law." *United States v. Winkles*, 795 F.3d 1134, 1140 (9th Cir. 2015). This Circuit was the only one to have squarely interpreted the travels-in clause before 2013. Had it intended

to repudiate this Court's interpretation, Congress would have altered the language of the travels-in offense. It did not.

The absence of change to the travels-in clause sweeps away any foundation for the panel majority's conclusion that a controlling statutory interpretation may be revisited "'where Congress has retroactively clarified the meaning of the statute.'" *Pepe*, 895 F.3d at 686 (quoting *Landreth v. Comm'r*, 859 F.2d 643, 648 (9th Cir. 1988)). That rule makes sense only when Congress repudiates a judicial decision in clear terms. *Landreth*, 859 F.2d at 646 (Congress named the case it intended to address and "correct[ed]" a statute to eliminate uncertainty the case created). The majority's contrary conclusion violated the "presumption against retroactive legislation," which requires courts to interpret statutes "to govern prospectively only" absent a "clear" manifestation of retroactive intent. *Vartelas v. Holder*, 566 U.S. 257, 269, 273 (2012). By deploying the 2013 amendment to narrow the scope of the pre-amendment statute, the panel majority simply ignored anti-retroactivity principles.[3]

---

[3] The other cases upon which the majority relied to revisit *Clark* prove the point: they involved *prospective* interpretations of amended

### 2. *Legislative History Contravenes the Panel Majority's Decision*

The majority's focus on the history of the 2013 amendment is also misplaced. *Pepe*, 895 F.3d at 687. "Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation." *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011). "[S]tatements by a later Congress do not inform [courts] about the intent of a previous Congress," *Olive v. C.I.R.*, 792 F.3d 1146, 1150 (9th Cir. 2015), and "later enacted laws . . . do not declare the meaning of an earlier law," *Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998). *See also FTC v. AT&T Mobility LLC*, 883 F.3d 848, 856 (9th Cir. 2018) (en banc) ("[T]he 'view of a later Congress cannot control the

---

statutes—not, as here, retrospective reinterpretations of pre-amendment versions. *See United States v. McNeil*, 571-72, 574 (9th Cir. 2004) (interpreting "newly constructed statute"); *Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1172 (9th Cir. 2003) (interpreting "present-day immigration law"); *United States v. Gonzalez-Torres*, 309 F.3d 594, 599 (9th Cir. 2002) (interpreting "the current statute"). Even if Congress had intended to narrow the scope of the travels-in clause in 2013, the amendment should not have been applied retroactively. Doing so worked an impermissible end-run around the presumption against retroactivity.

interpretation of an earlier enacted statute.'").  Whatever meaning
Congress ascribed to the 2003 statute in 2013 was irrelevant.

What mattered was Congress's intent in 2003.  On that score,
*Clark* was right—and binding.  The PROTECT Act was designed "to
'close significant loopholes' in previous legislation banning sex
tourism.'" *Jackson*, 480 F.3d at 1021 (quoting 2002 House Report).  The
express "purpose of the [law] was 'to make it a crime for a U.S. citizen to
travel to another country and engage in illicit sexual conduct with
minors.'" *Clark*, 435 F.3d at 1104 (same).  Once the PROTECT Act was
enacted, "'the government would only have to prove that the defendant
engaged in illicit sexual conduct with a minor *while in a foreign
country*.'" *Id.* at 1105 (quoting 2003 House Report (emphasis added)).
Congress thus intended *in 2003* to criminalize the conduct for which
defendant was convicted in 2008.  Congress could not undo that intent a
decade later.  *Bruesewitz*, 562 U.S. at 242.

If relevant at all, the (virtually nonexistent) 2013 legislative
history does not reflect any intent to abrogate *Clark*.  As in 2003,
Congress intended to *broaden* § 2423(c), closing any remaining
loopholes to ensure, as broadly as possible, the prosecution of child

18

predators. *See* S. Rep. 112-96, at 8 (2011). The goal was not to invalidate child rapists' convictions or to overrule precedent affirming them. The panel majority turned congressional intent on its head, punishing Congress by endorsing the argument it sought to foreclose. That, as Chief Judge Thomas pointed out, is not a plausible interpretation of the statute. *Pepe*, 895 F.3d at 694; *see Kasten v. Saint-Gobain Performance Plastics Co.*, 563 U.S. 1, 11 (2011) (rejecting "interpretation that . . . would undermine the Act's basic objectives").

## C. Rehearing Is Necessary Because This Case Impermissibly Overrules Precedent and Presents Questions of Exceptional Importance

This case warrants panel rehearing or en banc review.

The panel opinion directly negates "uniformity of the [C]ourt's decisions" by overruling *Clark* and contravening *Jackson*. Fed. R. App. P. 35(a)(1); *see Pepe*, 895 F.3d at 685-87. The majority's suggestion that *Clark* did not squarely decide the question the Court now revisits, *see Pepe*, 895 F.3d at 688, is mistaken. *Clark* construed § 2423(c), holding, emphatically, that "[i]t does not require that the conduct occur *while* traveling in foreign commerce." 435 F.3d at 1107. *Jackson* confirmed that "*Clark* quite explicitly treats the travel and illicit sex components

of the statute as distinct elements of the crime," and that, "[i]n light of *Clark*, an individual can violate § 2423(c) even if he stops traveling before he engages in illicit sex." 480 F.3d at 1017. *Jackson* reaffirmed that "the illicit sex act does not need to take place *during* the course of travel, but can occur thereafter." *Id.* at 1023. The majority reversed that rule. *See Pepe*, 895 F.3d at 692.

The potential consequences of the panel opinion are exceptionally important. "[D]ecisions that narrow the scope of a criminal statute by interpreting its terms" not only threaten to undermine child-rape convictions on direct appeal but may also have sweeping collateral consequences. *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). Child predators like defendant are guilty of unspeakable crimes. Their convictions should not be compromised by the majority's erroneous overruling of precedent, mistaken interpretation of the law, and inversion of congressional intent.

The opinion may also impede the prosecution of any pre-2013 illicit sex crimes for which defendants have not yet been convicted. "[A]n indictment may be found or an information instituted at any time without limitation for any offense" under § 2423(c). 18 U.S.C. § 3299.

20

Child victims often find it difficult to report sex-abuse, and their disclosures are frequently delayed and piecemeal. *See United States v. Bighead*, 128 F.3d 1329, 1330 (9th Cir. 1997) (discussing expert testimony on delayed disclosure). International investigations of sex offenses against children take years. *See, e.g.*, *United States v. Reed*, 2017 WL 3208458, at *2-3 (D.D.C. Jul. 27, 2017) (§ 2423(c) prosecution commenced eight years after the defendant impregnated a 14-year-old Filipina girl, following "a years-long" investigation); *Weingarten v. United States*, 865 F.3d 48, 51 (2d Cir. 2017) (§ 2423 defendant indicted 11 years after abusing his young daughter on international trips). It is likely that not all pre-2013 offenses have been discovered and prosecuted. The panel majority's narrowing of the travels-in clause may prevent those offenses from ever being prosecuted.

Finally, the majority's decision creates a circuit split. Absent rehearing, the travels-in offense in this Circuit will be limited to defendants "still traveling" when they abuse children. *Pepe*, 895 F.3d at 692. In other circuits, the travels-in offense does not appear to be so constrained. *See United States v. Al-Maliki*, 787 F.3d 784, 792 (6th Cir. 2015) ("The government need only prove that a citizen *at one point*

traveled in foreign commerce . . . and then committed the regulated, noncommercial act." (punctuation omitted)); *Pendleton*, 658 F.3d at 301, 304 (affirming conviction of defendant who molested a 15-year-old boy six months after traveling to Germany); *Frank*, 599 F.3d at 1239 ("§ 2423(c) punishes both traveling *and* engaging in illicit sexual conduct").

Although the resides-in clause might be used to prosecute future "resettled" sex offenders, at a minimum, resettled offenders who committed illicit sexual conduct before 2013 are likely immune from prosecution in this Circuit but subject to prosecution in other circuits. Such defendants, including child rapists like defendant, should be criminally punishable nationwide.

# IV

# CONCLUSION

The panel's decision misapprehends the law, impermissibly overrules binding precedent, incorrectly decides questions of exceptional importance, and creates a circuit split. Panel or en banc rehearing should be granted.

DATED: September 24, 2018      Respectfully submitted,

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

*/s/ Bram M. Alden*

BRAM M. ALDEN
NANCY B. SPIEGEL
Assistant United States Attorneys
Criminal Appeals Section

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO NINTH CIRCUIT RULE 35-4 and 40-1

I certify that:

1.     Pursuant to Circuit Rules 35-4(a) and 40-1(a), the attached petition for panel rehearing or rehearing en banc contains 4,138 words, excluding the parts of the brief exempted by Fed R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2010.

DATED: September 24, 2018              */s/ Bram M. Alden*

BRAM M. ALDEN
Attorney for Plaintiff-Appellee
UNITED STATES OF AMERICA

*United States v. Pepe,*
895 F.3d 679 (9th Cir. 2018)

895 F.3d 679
United States Court of Appeals, Ninth Circuit.

UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Joseph PEPE, Defendant-Appellant.

No. 14-50095
|
Argued and Submitted February
8, 2017—Pasadena, California
|
Filed July 11, 2018

**Synopsis**

**Background:** Defendant was convicted in the United States District Court for the Central District of California, Dale S. Fischer, J., of engaging in illicit sexual conduct in foreign places. Defendant appealed.

The Court of Appeals, Nguyen, Circuit Judge, held that prior version of statute that prohibited illicit sexual conduct in foreign places required government to prove that defendant was still traveling when he committed illicit sexual conduct.

Vacated and remanded.

Thomas, Chief Judge, filed dissenting opinion.

**\*681** Appeal from the United States District Court for the Central District of California, Dale S. Fischer, District Judge, Presiding, D.C. No. 2:07-cr-00168-DSF-1.

**Attorneys and Law Firms**

James H. Locklin (argued), Deputy Federal Public Defender; Hilary L. Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Nancy B. Spiegel, Assistant United States Attorney, Criminal Appeals Section; Patricia A. Donahue, Chief, National Security Division; Lawrence S. Middleton, Chief, Criminal Division; Eileen M. Decker, United States

Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

Before: Sidney R. Thomas, Chief Judge, and Andrew J. Kleinfeld and Jacqueline H. Nguyen, Circuit Judges.

Dissent by Chief Judge Thomas

**OPINION**

NGUYEN, Circuit Judge:

Michael Pepe, a U.S. citizen, drugged and raped seven children in Cambodia, where he claims to have resided for several years. Pepe was convicted of violating 18 U.S.C. § 2423(c), engaging in illicit sexual conduct in foreign places, and sentenced to prison for 210 years. The version of the statute under which he was convicted applied to a U.S. citizen "who travels in foreign commerce, and engages in any illicit sexual conduct with another person." 18 U.S.C. § 2423(c) (2005). Pepe's illicit sexual conduct occurred between three and nine months after his return to Cambodia following a brief trip to the United States to visit family and attend his daughter's wedding. Pepe contends that the statutory language didn't encompass his conduct because, as a resident of Cambodia, he had ceased "travel[ing] in foreign commerce."

Pepe's contention runs up against our previous conclusion that the statute "does not require that the conduct occur *while* **\*682** traveling in foreign commerce." *United States v. Clark*, 435 F.3d 1100, 1107 (9th Cir. 2006). Focusing on the word "and," which connected the travel with the conduct, we construed § 2423(c) to include individuals who, like Pepe, at some point traveled in foreign commerce *and thereafter* engaged in any illicit sexual conduct. *See id.*

However, Congress subsequently amended the statute to add a new basis for criminal liability. The statute now applies to a U.S. citizen "who travels in foreign commerce *or resides, either temporarily or permanently, in a foreign country*, and engages in any illicit sexual conduct with another person." 18 U.S.C. § 2423(c) (2018) (emphasis added). From the statutory amendment, as well as the accompanying legislative history, it is evident that § 2423(c) was previously inapplicable to U.S. citizens living abroad unless they were traveling—meaning something

more than being in transit—when they had illicit sex. Because this subsequent Congressional pronouncement is clearly irreconcilable with our prior construction of the statute, we are not bound by our reasoning in *Clark*.

The government appears to contest that Pepe relocated to Cambodia, but this factual dispute was not resolved below because the district court applied *Clark*. However, if Pepe resided in Cambodia and was no longer "traveling," then the prior version of § 2423(c) does not apply to him. We therefore vacate his convictions and sentence and remand for further proceedings.

## I.

Pepe, a 49-year-old U.S. citizen, left the United States for Cambodia in March 2003 on a one-way ticket. He rented a house, obtained a Cambodian driver's license, bought a car, and secured employment teaching management at a university in Phnom Penh. Pepe "married" a Cambodian citizen, Bith Chanry, and the two of them lived together for a while. [1] He also became involved in community activities, such as the Phnom Penh Veterans of Foreign Wars Post and the local Catholic church.

Pepe occasionally traveled to the United States to visit his family. His last such trip prior to his arrest was to Los Angeles for a week in August 2005 to attend his daughter's wedding. Nearly a year after his return to Cambodia, in June 2006, local authorities took him into custody and searched his home based on information from American officials that a girl had reported him sexually abusing her. He spent seven months in a Cambodian prison and then was handed over to U.S. authorities, who brought him to the United States.

Pepe was indicted on seven counts of engaging in illicit sexual conduct in foreign places between three and nine months following his return to Cambodia from the wedding. He moved to dismiss the indictment and suppress evidence taken from his home and examined in Singapore and the United States. The district court denied each of these motions.

**\*683** At trial, the prosecution presented evidence that Pepe met a prostitute, Basang, at Sharkey Bar in Phnom Penh about five years before his arrest. [2] Pepe paid Basang for sex several times, but she worked for him primarily

by procuring girls around 10–12 years old for sex. Basang gave the girls' families money from Pepe in exchange. Pepe paid Basang's rent and gave her $300 to help pay for her parents' gravestones. Basang also translated for him—the girls and their mothers spoke little or no English, and he could not communicate in the languages that they spoke, Khmer and Vietnamese.

The girls, six of whom testified at trial, lived with Pepe at various times for a few days to several weeks. Basang taught the girls to massage and orally copulate Pepe while he and they were naked. After the girls did this, Pepe would give them a dollar bill. In addition, he forcibly raped each of the girls at least once; some, three times or more. Often, when raping a girl for the first time, Pepe or Basang would give the girl a sedative and Pepe would tie her legs to his bed with a rope. If the girl screamed when she awoke, he would slap her, tape her mouth, or cover her head with a pillow.

The jury convicted Pepe on all seven counts. The district court sentenced him to consecutive 30-year sentences for a total of 210 years in prison. In addition, the court ordered him to pay $247,213 in restitution to two Cambodian non-governmental organizations, Hagar and Agape, on the victims' behalf.

## II.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

Whether 18 U.S.C. § 2423(c) applies to U.S. citizens who reside in—as opposed to just travel to—a foreign country is a question of law which we review de novo. *See United States v. Sheldon*, 755 F.3d 1047, 1049 (9th Cir. 2014).

## III.

### A.

Section 2423 originated in the White-Slave Traffic (Mann) Act, ch. 395, § 3, 36 Stat. 825 (1910). For decades, the statute covered only situations in which the minor victim of certain sex crimes was transported across state or

federal borders. Whether the perpetrator accompanied the victim in the travel or arranged the transportation from afar was irrelevant. *See United States v. Barrington*, 806 F.2d 529, 534 (5th Cir. 1986) (holding that perpetrator's "own travel, distinct from her causing others to travel," was unnecessary for § 2423 conviction); *cf. United States v. Jones*, 909 F.2d 533, 540 (D.C. Cir. 1990) ("[O]ne need not physically carry or accompany a person interstate in order to 'transport' her ....").

To address the situation where the perpetrator traveled but the victim stayed put, Congress added the offense currently codified in § 2423(b) to punish persons who travel in interstate or foreign commerce "for the purpose of engaging in [a prohibited] sexual act." Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 160001(g), 108 Stat. 1796. Proving that foreign travelers intended to engage in sexual misconduct with children at the time they left the United States turned out to be difficult. **\*684** The 1994 law resulted in only a handful of such convictions nationwide, *see* Karen D. Breckenridge, Comment, *Justice Beyond Borders: A Comparison of Australian and U.S. Child-Sex Tourism Laws*, 13 P. Rim L. & Policy J. 405, 415 (2004), prompting Congress to amend the statute again less than a decade later. *See* Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, § 105, 117 Stat. 650.

The offense at issue here, § 2423(c), was added in the PROTECT Act. Congress purposefully omitted an intent element in order to facilitate prosecutions. *See* H.R. Conf. Rep. 108-66, at 51 (2002) (amending § 2423 to address "a number of problems related to persons who travel to foreign countries and engage in illicit sexual relations with minors," including the need "to prove that the defendant traveled with the intent to engage in the illegal activity").

As originally enacted, the statute applied to "[a]ny United States citizen ... who travels in foreign commerce, and engages in any illicit sexual conduct with another person." [3] 18 U.S.C. § 2423(c) (2003). That version of the statute was in effect when Pepe engaged in illicit sexual conduct. It's also the version that was at issue in *Clark*, where we considered its interpretation and constitutionality under similar facts.

### B.

Michael Clark, a U.S. citizen and military veteran, resided primarily in Cambodia for approximately five years before being extradited. *Clark*, 435 F.3d at 1103. He took annual trips back to the United States, where he "maintained real estate, bank accounts, investment accounts, a driver's license, and a mailing address." *Id.* After one such trip to visit family, he flew back to Cambodia via third countries. *Id.* Within two months of his return, "Clark came under suspicion when street kids reported to social workers that he was molesting young boys on a regular basis." *Id.* The Cambodian National Police ("CNP") arrested Clark, charged him with debauchery, and ultimately turned him over to U.S. authorities for prosecution here. *Id.* He pled guilty to violating § 2423(c).

On appeal, Clark argued that the statute was an unconstitutional exercise of Congressional power but could "be saved from constitutional scrutiny by interpreting it to require that the illicit sexual conduct take place while the defendant is literally still traveling." *Clark*, 435 F.3d at 1107. We disagreed. Observing that § 2423 has "two key determinations"—whether the defendant "travels in foreign commerce" and "engages in any illicit sexual conduct"—we concluded that the statute "does not require that the conduct occur *while* traveling in foreign commerce." *Clark*, 435 F.3d at 1105, 1107; *see United States v. Jackson*, 480 F.3d 1014, 1017 (9th Cir. 2007) ("In light of *Clark*, an individual can violate § 2423(c) even if he stops traveling before he engages in illicit sex.").

Although we viewed the statute as "unambiguous" in this respect, *Clark*, 435 F.3d at 1107, our focus was on the word **\*685** "and," which connected the travel with the conduct. We construed the statute to mean: travels in foreign commerce *and thereafter* engages in any illicit sexual conduct. We thus saw "no plausible reading of the statute that would exclude its application to Clark's conduct because of [the] limited gap" of two months "between his most recent transit between the United States and Cambodia and his arrest." *Id.* We speculated that there might be a constitutional problem with a longer gap but had no reason to consider the issue. *Id.* at 1107 n.11.

Acknowledging a different interpretive possibility in which "and" means "and concurrently," we dismissed

it as leading to absurd results. As a practical matter, we thought it "non-sensical" that Congress would have limited § 2423(c)'s scope "to the unlikely scenario where the abuse occurs while the perpetrator is literally en route." *Id.* at 1107. Such a reading, we explained, "would eviscerate § 2423(c) by severely limiting its use to only those people who commit the offense while physically onboard an international flight, cruise, or other mode of transportation." *Id.*

Implicit in this apparent absurdity, however, was *Clark*'s assumption that the meaning of "travels" was limited to "transits." One travels in that sense by "mov[ing] ... from one place to another." *Travel*, Merriam-Webster, https:// www.merriam-webster.com/dictionary/travel (last visited Nov. 8, 2017). But "travel" could also have the broader meaning of "go[ing] on ... a trip or tour." *Id.* As we pointed out the following year, "a person who is temporarily in France or Thailand—on vacation, for example, or on a business trip—but fully intends to return to a permanent residence in the United States is 'traveling' as long as he remains in the foreign city ...." *Jackson*, 480 F.3d at 1023.

Employing this broader understanding of "travels," the statutory language linking travel "and" illicit sexual conduct could mean, consistent with the goal of combatting sex tourism, that the two elements must occur at the same time. So interpreted, § 2423(c) would apply to sex tourists who fly to foreign countries for a finite time, have illicit sex, and then return to the United States. But it would not apply to Americans who have illicit sex while residing in the foreign country, because they are not traveling. The sex tourist's stay in the foreign country need not be short or have a set end date, but it must be expected to end. In other words, the stay must be temporary. *See United States v. Schmidt*, 845 F.3d 153 (4th Cir. 2017) (construing the U.S. citizen's "travels" to last eighteen months where he didn't resettle in the foreign country during that time), *cert. denied*, ––– U.S. ––––, 138 S.Ct. 234, 199 L.Ed.2d 152 (2017).

We thus see two plausible interpretations of the statute. In one, "travels" is construed broadly while "and" is construed narrowly to require that the travel and the illicit sexual conduct occur at the same time. In the other —the one adopted in *Clark* and rejected by the Fourth Circuit in *Schmidt*—it's just the opposite. Travel under this view "end[s] when the citizen arrives in a foreign country." *Jackson*, 480 F.3d at 1023. In this construction,

as we explained in *Clark*, the connector "and" necessarily creates an open-ended temporal relationship between the travel and the sexual misconduct in order to save the statute from irrelevance.

## C.

Normally, *Clark*'s interpretation of the statute would bind subsequent panels, including ours. *See, e.g., United States v. Parga-Rosas*, 238 F.3d 1209, 1212 (9th Cir. 2001). But there's an important exception **\*686** to this principle. We have a rule that "where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

The "intervening higher authority" is generally the federal or state court of last resort or an en banc panel of this court. However, Congressional amendments to a statute can also "constitute 'intervening' authority for the purposes of our rule." *Landreth v. Comm'r*, 859 F.2d 643, 648 (9th Cir. 1988); *see United States v. McNeil*, 362 F.3d 570, 574 (9th Cir. 2004) ("[W]hen Congress amends statutes, our decisions that rely on the older versions of the statutes must be reevaluated in light of the amended statute." (citing *Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1172 (9th Cir. 2003) ) ). In particular, "the rule is applicable in cases involving statutory interpretation where Congress has retroactively clarified the meaning of the statute at issue." *Landreth*, 859 F.2d at 648. If our case law interpreting a statute is clearly irreconcilable with the text and history of subsequent legislation, we are not bound by the decisions of prior panels. *See United States v. Gonzalez-Torres*, 309 F.3d 594, 599 (9th Cir. 2002) (citing *United States v. Washington*, 872 F.2d 874, 880 (9th Cir. 1989) ). We are dealing with such a case here.

In 2013, Congress amended § 2423(c) as part of the Violence Against Women Reauthorization Act, Pub. L. 113-4, § 1211(b) (2013). The statute now penalizes a U.S. citizen "who travels in foreign commerce *or resides, either temporarily or permanently, in a foreign country*, and engages in any illicit sexual conduct." 18 U.S.C. § 2423(c) (emphasis added).

This change to the statute makes no sense as we interpreted the original version in *Clark*. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Pierce County v. Guillen*, 537 U.S. 129, 145, 123 S.Ct. 720, 154 L.Ed.2d 610 (2003). Yet the amendment to § 2423(c) would have virtually no effect if the illicit sexual conduct can occur anytime after the travel. Almost every U.S. expatriate travels in foreign commerce before residing overseas. Under *Clark*'s analysis, "the only U.S. citizens who could fall outside the reach of § 2423(c) if they engage in illicit sexual conduct abroad are those who never set foot in the United States." *Clark*, 435 F.3d at 1120 (Ferguson, J., dissenting).

Indeed, that is exactly the government's position. It argues that the amendment "was intended to close the loophole of the prior version of the statute that did not criminalize the illicit sexual conduct committed by Americans residing abroad who had not traveled in foreign commerce." Even if that were plausible in the abstract, it is incongruent with the amendment's text.

The offense has always contained two elements: travel in foreign commerce, and the commission of illicit sexual conduct. The amendment concerned the first element, which can now be satisfied in two ways. One either "travels in foreign commerce or resides ... in a foreign country." 18 U.S.C. § 2423(c).

The word "and," which connects the first element with the second, now modifies both "travels" and "resides." With respect to "travels," we interpreted "and" sequentially in *Clark*—one travels, completes the travel by arriving in the foreign country, *and afterwards* engages in illicit sexual **\*687** conduct. That interpretation of "and" makes no sense with respect to "resides." The statute obviously was not meant to apply to someone who resides, perhaps temporarily, in a foreign country *and afterwards* engages in illicit sexual conduct. Rather, in that context "and" means "and concurrently"—one engages in the illicit sexual conduct *while residing* in the foreign country. By adhering to our construction in *Clark*, "[t]he word '[and]' would have two different meanings at once .... It would be rather like saying 'He filled and kicked the bucket' to mean 'He filled the bucket and died.' Grotesque." *District of Columbia v. Heller*, 554 U.S. 570, 587, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

The government's explanation for the amendment is also flatly contradicted by the legislative history. *See Landreth*, 859 F.2d at 648 (looking to both the text of the statutory changes and Congressional statements of purpose); *cf. Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 380–81, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969) ("Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction."). The amendment was adopted nearly verbatim from a proposal by the Alliance to End Slavery & Trafficking ("ATEST"), a lobbying organization comprised of various human rights groups. ATEST advocated for the change out of concern that the original law "only allows the U.S. government to pursue criminal charges against U.S. citizens ... who exploit children while traveling in foreign commerce. Due to the use and intent of the word 'travel,' this has been interpreted to mean a brief stay and not include resettlement or intent to stay." ATEST, *Recommendations for the Reauthorization of the Trafficking Victims Protection Act of 2000*, at 31 (2011), http://www.castla.org/assets/files/2013_TVPRA_Summary.doc (last visited Oct. 25, 2017); *see Best Practices and Next Steps: A New Decade in the Fight Against Human Trafficking: Hearing Before the Subcomm. on Afr., Glob. Health, & Human Rights of the H. Comm. on Foreign Affairs*, 112th Cong. 139 (2011) (material submitted by David Abramowitz, Director of Policy and Government Relations, Humanity United) (recommending that Congress "[c]riminalize the exploitation of children by U.S. citizens living overseas").

Congress shared this understanding of the law, citing the amendment to § 2423(c) as an example of the "significant changes" it was making to "fight human trafficking crimes." S. Rep. 112-96, at 8 (2011). The Senate Report explained that child exploitation laws were being "strengthened to hold criminally liable those U.S. citizens ... residing outside of the United States who engage in illicit sexual conduct with a minor. Current law only reaches U.S. citizens ... who travel abroad in foreign commerce." *Id.* If the design of this legislation was to reach only those U.S. citizens living abroad and committing illicit sexual conduct who had never stepped foot on U.S. soil, it could hardly be described as a "significant" change to existing law.

We thus conclude that *Clark*'s construction of § 2423(c) is clearly irreconcilable with the plain text of its subsequent

18 Cal. Daily Op. Serv. 6842, 2018 Daily Journal D.A.R. 6807

amendment as well as Congress's stated reason for the change. The statute originally did not target *all* U.S. citizens who traveled overseas and committed sex crimes with minors—only those who resided in the United States. Because this ensnared only sex tourists who committed their sex crimes while traveling in the foreign country, Congress amended the statute to cover even U.S. citizens who chose to relocate, either temporarily or permanently, overseas.

We do not depart from circuit precedent lightly. When intervening higher authority **\*688** casts doubt on our prior statutory interpretation, we must attempt to reconcile the two, reserving for an en banc panel the prerogative to overrule imprudent but still tenable decisions. *See Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1106 (9th Cir. 2016). If it were possible, consistent with *Clark*, we would read the amendment to § 2423(c) as clarifying rather than enlarging its scope. But even the government agrees that Congress expanded criminal liability when it amended the statute. There's no interpretation of the current statutory text that is consistent both internally and with *Clark*.

Departing from precedent might still give us pause if *Clark* had considered and rejected the interpretation we adopt today. However, *Clark*'s analysis focused on the statute's constitutionality. In its brief discussion of the statute's meaning, *Clark* weighed only whether "and" should be construed narrowly or broadly. It didn't consider this question in the context of whether "travels" could be read more expansively. Just as cases are not precedential for propositions not considered, *see United States v. Ramos-Medina*, 706 F.3d 932, 938 (9th Cir. 2013), *Clark* does not foreclose an interpretation of the statute that it didn't consider when subsequent Congressional action renders that interpretation the only one possible.

### D.

Aside from what the 2013 amendment revealed about Congressional intent, there are good reasons to interpret the former statute as we do. We normally resolve "ambiguity concerning the ambit of criminal statutes ... in favor of lenity." *Jones v. United States*, 529 U.S. 848, 858, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000) (quoting *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971) ). This canon of construction serves the policy of giving "fair warning ... to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) (quoting *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931) ). In addition, "because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity." *Id.*

By dispensing with the intent element, § 2423(c) marked a dramatic departure from existing law in order to facilitate convictions. [4] Strict liability is generally imposed for so-called "public welfare offenses" that "are in the nature of neglect where the law requires care, or inaction where it imposes a duty." *Morissette v. United States*, 342 U.S. 246, 255, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Such offenses rarely involve moral condemnation by the community; they tend to carry minor penalties, with conviction resulting in no grave harm to an offender's reputation. **\*689** *Id.* at 256, 72 S.Ct. 240. Section 2423(c), in contrast, threatens an offender with up to 30 years in prison and lifetime registration as a sex offender. *See* 34 U.S.C. § 20913(a). Application of the rule of lenity takes on heightened importance when an offense requires no mens rea and its potential penalty is so severe. [5]

Another venerable canon of construction instructs us that "ambiguous statutory language [should] be construed to avoid serious constitutional doubts." *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 516, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009) (citing *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) ). Congress ostensibly enacted § 2423(c) pursuant to its authority under the Foreign Commerce Clause. *See Clark*, 435 F.3d at 1104. The government argues that the Necessary and Proper Clause was another basis for the legislation because Congress needed to implement an international convention on child trafficking to which the United States was a signatory—the Optional Protocol to the Convention on the Rights of the Child on the sale of children, child prostitution and child pornography, G.A. Res. 54/263, U.N. Doc. A/54/263 (May 25, 2000). Pepe disputes that either Clause is a valid source of Congressional authority.

*Clark* acknowledged the possibility that "a longer gap between the travel and the commercial sex act could trigger constitutional or other concerns." 435 F.3d at 1119 n.11. With no statutory limitation on the temporal gap we all but guarantee a stream of litigation over the statute's constitutionality. *See* Naomi Harlin Goodno, *When the Commerce Clause Goes International: A Proposed Legal Framework for the Foreign Commerce Clause*, 65 Fla. L. Rev. 1139, 1210–11 (2013) ("[E]ach scenario [under § 2423(c) ] would have to be considered on a case-by-case basis to determine if Congress is acting within its power under the Foreign Commerce Clause."). In any given case, defense counsel would be remiss not to attempt to distinguish their client from Michael Clark due to a longer gap between the travel and the illicit sexual conduct or some other factor that makes the connection with foreign commerce more attenuated.

Nor are Pepe's constitutional arguments trivial. "Cases involving the reach of the Foreign Commerce Clause vis-[à]-vis congressional authority to regulate our citizens' conduct abroad are few and far between." *Clark*, 435 F.3d at 1102. There is "strong textual, structural, and historical evidence that Congress has less—not more— power to impose U.S. law inside foreign nations than inside the several states under the Commerce Clause." Anthony J. Colangelo, *The Foreign Commerce Clause*, 96 Va. L. Rev. 949, 1003 (2010); *see also United States v. Al-Maliki*, 787 F.3d 784, 791 (6th Cir. 2015) ("doubt[ing]" that the Foreign Commerce Clause "include[s] the power to punish a citizen's noncommercial conduct while the citizen resides in a foreign nation"). And the government's argument under the Necessary and Proper Clause rests on a 1920 case that has been sharply criticized **\*690** in recent years. [6] While the current version of § 2423(c) will inevitably force us to grapple with the outer limits of Congress's power to regulate the conduct of U.S. citizens residing abroad, we leave that question for another day.

Finally, our interpretation brings us in line with the several other circuits that read "travels" expansively. *See Schmidt*, 845 F.3d at 157 ("A person may still be traveling even after a significant amount of time in a given location so long as the visit is sufficiently transient or contemplates some future departure." (citing *Jackson*, 480 F.3d at 1022) ); *United States v. McGuire*, 627 F.3d 622, 624 (7th Cir. 2010) ("Section 2423(c) was added to punish persons who travel in foreign commerce and have sex with a minor in the course of the trip regardless of what

the defendant intended when he set out on it."); *United States v. Frank*, 599 F.3d 1221, 1239–40 (11th Cir. 2010) (finding no plain error in proposition that "§ 2423(c) allows multiple sentences for making a single trip during which the defendant engaged in illicit sexual conduct with multiple minors"). *But see United States v. Pendleton*, 658 F.3d 299, 309 (3d Cir. 2011) ("[U]nder § 2423(c), a person's travel through foreign commerce continues to provide a link to his illicit sexual conduct long after his travel is complete.").

### E.

The dissent responds to a straw argument by misstating Pepe's position both here and in the district court as one of only temporary residency in Cambodia. According to the dissent, Pepe "did not rest his statutory argument on his alleged intent to resettle" before the district court and "[f]or the first time on appeal ... argues that his temporary residency ... took his conduct out of the statutory reach of § 2423(c)." Dissent at 692 & n.1. To the contrary, throughout the proceedings Pepe has maintained that "he was indeed a resident of Cambodia who had demonstrated a 'permanent intent to resettle' in that country." In moving to dismiss the indictment, Pepe represented to the district court that he had "permanently relocated to Cambodia" in 2003, more than two years before the conduct at issue. He argued that "the statute in no way indicates that it's intended ... to target people who were already residing in a foreign country and had demonstrated ... no intent to return."

The dissent acknowledges that prior to the 2013 amendment, § 2423(c) "likely did not apply to citizens who had permanently resettled in a foreign country." **\*691** Dissent at 694. Given Pepe's claim that he was residing in Cambodia on a permanent basis, we fail to see the relevance of the dissent's contention that the statute has always applied to persons residing abroad temporarily. If the statute did not apply to U.S. citizens permanently living overseas, Pepe's conviction cannot stand.

The dissent's only response is that Pepe should have raised his statutory argument in the district court. *See* Dissent at 692 n.1, 694. In fact, he did. The district court understood Pepe to argue that "he was no longer traveling at the time he allegedly engaged in illicit sexual conduct, because he permanently resided in Cambodia." The district court

18 Cal. Daily Op. Serv. 6842, 2018 Daily Journal D.A.R. 6807

rejected this argument on the ground that Pepe "did not have to be traveling at the time he engaged in illicit sexual conduct in order to be liable under § 2423(c)."

But even if Pepe didn't present his precise statutory argument to the district court, there was no reason for him to do so. Under *Clark*'s then-binding interpretation of the statutory language, it was a nonstarter. Michael Clark's argument that he had permanently resettled in Cambodia was rejected as irrelevant to the statutory definition. *See United States v. Clark*, 315 F.Supp.2d 1127, 1134 & n.2 (W.D. Wash. 2004). We agreed with the district court that carving out an exception for permanent residents would "add elements to the crime ... that simply do not exist in the statute." *Clark*, 435 F.3d at 1107 (quoting *Clark*, 315 F.Supp.2d at 1130).

The dissent concedes that Pepe's statutory theory was "not viable under applicable case law" at the time. Dissent at 695. Indeed, it wasn't until five years after Pepe's conviction that Congress passed the statutory amendment giving rise to his interpretive challenge. A defendant need not raise a futile defense at trial in order to preserve it for appeal. *See United States v. Wilbur*, 674 F.3d 1160, 1177 (9th Cir. 2012) (citing *United States v. Manning*, 56 F.3d 1188, 1195 (9th Cir. 1995) ).

Moreover, the government doesn't assert that Pepe forfeited his statutory claim. By responding to the merits of Pepe's contentions, the government forfeited any forfeiture argument. *See United States v. Lewis*, 787 F.2d 1318, 1323 n.6 (9th Cir. 1986); *see also Tibble v. Edison Int'l*, 843 F.3d 1187, 1196 (9th Cir. 2016) (en banc).

We do not lightly overturn Pepe's convictions. But we cannot uphold his 210-year sentence under a statute that he may not have violated simply because his reprehensible conduct harmed vulnerable children. Due process requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The government has not met this burden with respect to the travel element.

## IV.

We hold that a conviction under § 2423(c), when based on a defendant's travel in foreign commerce, requires proof

that the illicit sexual conduct occurred while the defendant was traveling. If, as Pepe maintains, he relocated to Cambodia in March 2003, then the statute does not apply to him.

The government appears to dispute Pepe's claim that he had resettled in Cambodia, citing among other things Pepe's post-arrest letters to the U.S. ambassador and various family members expressing his intent to register his Cambodian marriage and return to the United States with his wife. Because the jury was not properly instructed on the travel element, we vacate **\*692** Pepe's convictions and sentence. On remand, should the government elect to retry him, it will need to prove that he was still traveling when he committed illicit sexual conduct.

**VACATED and REMANDED.**

THOMAS, Chief Judge, dissenting:
*United States v. Clark*, 435 F.3d 1100 (9th Cir. 2006) remains good law and is binding on this panel. It is not "clearly irreconcilable" with the 2013 amendment to § 2423(c). Indeed, *Clark*'s holding of the statutory reach of the prior statute is completely consistent with the amendment. Further, the question of whether the prior statute applied to citizens who temporarily resided abroad and intended to resettle was never argued to the district court. We should not be deciding that question in this appeal, much less overturning prior circuit precedent as a three judge panel. Therefore, I must respectfully dissent.

For the first time on appeal, Pepe argues that his temporary residency, by itself, took his conduct out of the statutory reach of § 2423(c).[1] Part of his argument is founded on the 2013 amendment to § 2423(c). The version of the statute under which Pepe was convicted applied to "[a]ny United States citizen ... who travels in foreign commerce, and engages in any illicit sexual conduct with another person." 18 U.S.C. § 2423(c) (2003). The 2013 amendment added the phrase "or resides, either temporarily or permanently, in a foreign country." It otherwise reenacted the prior statute and left the remaining phrases untouched.

We, of course, presume as a general rule that Congressional amendments are intended "to have real and substantial effect." *Pierce County v. Guillen*, 537 U.S. 129, 145, 123 S.Ct. 720, 154 L.Ed.2d 610 (2003).

However, the principles of statutory construction do not end there. "The mere fact of an amendment itself does not indicate that the legislature intended to change a law." *Callejas v. McMahon*, 750 F.2d 729, 731 (9th Cir. 1984). Indeed, we also presume that Congress "had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 802–03, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985) (quoting *Lorillard v. Pons*, 434 U.S. 575, 580–81, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ). Further, "when 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its ... judicial interpretations as well.' " *Merrill Lynch v. Dabit*, 547 U.S. 71, 85–86, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 645, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) ).

Thus, we presume that, in enacting the 2013 amendments, Congress was well aware of the prior judicial interpretations of the prior statute. Although the underlying **\*693** analysis in cases interpreting § 2423(c) may have differed, the holding was entirely the same: § 2423(c) applied to conduct that occurred after the U.S. citizen arrived in a foreign country. *Clark* rejected the defendant's contention that the crime must be committed "while the perpetrator is literally en route." 435 F.3d at 1108. Rather, *Clark* held that a two month gap between the end of transit and the crime did not take Clark's actions out of the statutory reach, reasoning that the twofold requirement of foreign travel and illicit sexual conduct "does not require that the conduct occur *while* traveling in foreign commerce." *Id.* at 1107. *Clark* noted that the legislative history of the prior legislation strongly suggested that Congress intended for the original statute to encompass conduct after the completion of travel, during residencies and other long-term stays in foreign countries. *Clark*, 435 F.3d at 1104, 1108; H.R. Rep. No. 108–66, at 51 (2003) ("Under [§ 2423(c) ]{fs28, the government would only have to prove that the defendant engaged in illicit sexual conduct with a minor while in a foreign country.

The Fourth Circuit reached the same conclusion that arrival in a country did not terminate the statutory reach of § 2423(c) by expansively interpreting the term "traveling" broadly as "encompass[ing] movement abroad that maintains some nexus with the United States." *United*

*States v. Schmidt*, 845 F.3d 153, 157 (4th Cir. 2017). *Schmidt* noted that "[a] person may still be traveling even after a significant amount of time in a given location so long as the visit is sufficiently transient or contemplates some future departure." *Id.* The bottom line of both cases is precisely the same: the reach of § 2423 did not stop when the U.S. Citizen arrived on foreign soil. [2]

Indeed, federal courts have uniformly and repeatedly applied the original statute to capture precisely this type of conduct. *See, e.g.*, *Schmidt*, 845 F.3d at 155 (applying the statute to a citizen who fled to the Philippines and then Cambodia a year later); *Clark*, 435 F.3d at 1103 (convicted defendant repeatedly molested young boys while residing in Cambodia from 1998 until extraction in 2003, with annual trips back to the United States); *United States v. Pendleton*, 658 F.3d 299, 301 (3d Cir. 2011) (convicted defendant molested a minor six months after arrival in Germany); *United States v. Flath*, No. 11-CR-69, 2011 WL 6299941, at *1, *12 (E.D. Wis. Sept. 14, 2011), *report and recommendation adopted in relevant part*, 845 F.Supp.2d 951 (E.D. Wis. 2012) (defendant was indicted in 2010 despite maintaining living in Belize for four years).

Significantly, both *Clark* and *Schmidt* stand for the proposition that living abroad alone did not place the defendants out of the reach of § 2423(c). The defendant in *Clark* had "primarily resided in Cambodia from 1998 until his extradition in 2004." 435 F.3d at 1103. The defendant in *Schmidt* had lived abroad for almost two years. 845 F.3d at 157.

In sum, when Congress passed the 2013 amendments, it was aware of the uniform judicial decisions interpreting § 2423(c) that held that the statute applied to conduct occurring after the defendant arrived in a foreign country even if the defendant **\*694** had been living abroad and had remained in the foreign country for "a significant amount of time." *Schmidt*, 845 F.3d at 157. Congress did not alter that language, evincing its intent to incorporate those judicial interpretations. *Merrill Lynch*, 547 U.S. at 85–86, 126 S.Ct. 1503. Thus, there is nothing in the amended statute that would indicate an intent to overrule *Clark*, or assign some other meaning to the prior statutory language.

There were other judicial observations on the prior statute that were doubtless important to Congress. No case prescribed a temporal limit as to the statute's reach

on the citizen's presence in a foreign country. However in *United States v. Jackson*, 480 F.3d 1014 (9th Cir. 2007) we construed *Clark* as implying that "travel can end for a United States citizen at *some* point while still abroad," and we suggested that the statute did not reach citizens who had permanently resettled in a foreign country because their foreign travel had ended. *Id.* at 1023. *Schmidt* also recognized the possibility that a citizen's permanent resettlement in a foreign country might place the citizen's conduct beyond the reach of the statute. 845 F.3d at 158. However, *Schmidt* held that "[w]hile intent to permanently resettle may be one factor in determining when relevant travel in foreign commerce comes to an end, it is not dispositive." *Id.* Thus, at the time Congress passed the amendments, applicable case law interpreting the prior statute suggested that § 2423(c) did not apply to U.S. citizens who had permanently resettled in another country. Thus, it was quite logical for Congress to add amendatory language to address that situation and make it clear that the statute applied to all U.S. citizens not only who "travel[ed] in foreign commerce," but to those who "reside[ ], either temporarily or permanently, in a foreign country." The new language settled the question of whether the statute applied to U.S. citizens who had permanently resettled in another country. It did not, however, purport to alter the meaning of the prior statutory language, which remained intact.

In short, when Congress passed the 2013 amendments, we presume it was aware of judicial interpretations of the existing statute, holding that: (1) the statute applied to conduct after the citizen arrived in the foreign country, even if the citizen had been abroad for a significant time and had taken up temporary residency, and (2) the statute likely did not apply to citizens who had permanently resettled in a foreign country. Because Congress reenacted the same language that courts had construed, we presume that Congress intended to incorporate those judicial interpretations, rather than supplant them. *Merrill Lynch*, 547 U.S. at 85–86, 126 S.Ct. 1503. By adding permanent residency to the statute, it was expanding the statutory reach, not contracting. Thus, the amendments had "real and substantial effect," but did not alter existing law as to construction of the prior statute. To the extent that the new language clarified that the statute applied

to temporary residency, it was merely a clarifying amendment, not a substantive change in the existing law. *ABKO Music Inv. v. Lavere*, 217 F.3d 684, 691 (9th Cir. 2000). It is implausible to believe that Congress intended through the 2013 amendments to narrow the application of the prior statute.

Thus, there is nothing in the 2013 amendments that is "clearly irreconcilable" with *Clark*, and certainly nothing that would justify a three judge panel overruling it.

Under *Clark*, *Schmidt*, and every other federal case construing the prior version of § 2423(c), the statute applied to Pepe. His objection, made for the first time on appeal, **\*695** to the statute's application is that he had been living in Cambodia for some time, which is not sufficient to avoid the statute under *Clark*, *Schmidt*, or *Pendleton*. As noted earlier, he did not argue to the district court that the statute did not apply to him because he had intended to permanently resettle; he only made an argument as to the temporal reach of the statute, and that theory was clearly precluded by case law. He did not request a jury instruction stating that the statute did not apply to citizens who had taken up residency abroad or that had permanently resettled; he only requested one that said that the illegal conduct must occur immediately or soon after travel in foreign commerce. There was no error, much less plain error, in the district court's denial of the motion to dismiss the indictment on an unasserted theory of statutory construction, nor in the district court not *sua sponte* instructing the jury on a theory not asserted at trial and not viable under applicable case law.

In sum, under *Clark*, the prior version of § 2423(c) applies to Pepe, as the majority concedes. There is nothing in the 2013 amendments that is "clearly irreconcilable" with *Clark*. Thus, it remains good law, binding on this panel, and requires affirmance.

For these reasons, I respectfully dissent. [3]

## All Citations

895 F.3d 679, 18 Cal. Daily Op. Serv. 6842, 2018 Daily Journal D.A.R. 6807

Footnotes

1    The legal status of their relationship is unclear. Prior to their wedding, Pepe and Bith signed a declaration stating that the ceremony was for "satisfying Bith family considerations" and not "to have any legal standing under Cambodian law, American law or international law." After his arrest, Pepe wrote to the U.S. Ambassador to Cambodia, requesting assistance in registering his marriage. Around the same time, he wrote to his family in the United States, acknowledging years of "on again / off again problems" between himself and Bith and stating that they "are still married."

2    Basang was deposed at the U.S. embassy in Cambodia while serving a 27-year sentence for trafficking and pimping. Her deposition testimony was played for the jury.

3    Pepe doesn't dispute that his conduct fell within the definition of "illicit sexual conduct," which means either (1) certain defined sex acts with a minor that, if performed on U.S. soil, would violate specified sexual abuse laws; or (2) "any commercial sex act" with a minor. 18 U.S.C. § 2423(f). A "commercial sex act" is "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(c)(1). The crimes comprising the definition's first prong "share the common characteristic that there is no economic component," *i.e.*, that "they are non-commercial sex acts." *Clark*, 435 F.3d at 1105. The jury found Pepe's conduct fell within both prongs.

4    While § 2423(c) doesn't itself require a mens rea, "illicit sexual conduct" can be established through offenses that do. *See* 18 U.S.C. § 2423(f)(1). However, illicit sexual conduct can also be established through a commercial sex act, *id.* § 1591, or production of child pornography, *id.* § 2256(8), neither of which requires a particular state of mind. *See id.* § 2423(f)(2)–(3). Moreover, the requisite mens rea, when applicable, is minimal. Statutory rape, for example, requires proof only that the defendant "knowingly" engaged in a sexual act with another person. *Id.* § 2243(a). The government doesn't need to prove knowledge of the victim's age, though reasonable mistake about it is a defense. *See id.* § 2243(c)(1), (d).

5    A person such as Pepe who commits heinous acts over a long period of time obviously has an intent to violate the law. But the statute would apply equally to a 19-year-old who has a romantic and mutually desired sexual relationship with a 15-year-old, *see* 18 U.S.C. §§ 2243(a), 2423(f)(1), even if the relationship is legal in both the 19-year-old's home state and the foreign country, *see, e.g.*, Colo. Rev. Stat. § 18-3-402(e); *Code pénal* art. 227-25 (Fr.). We can't invoke the rule of lenity selectively for sympathetic defendants.

6    In *Missouri v. Holland*, the Supreme Court held that "[i]f [a] treaty is valid there can be no dispute about the validity of the [implementing] statute under Article 1, Section 8, as a necessary and proper means to execute the powers of the Government." 252 U.S. 416, 432, 40 S.Ct. 382, 64 L.Ed. 641 (1920). Nearly a century later, the Court interpreted a criminal statute narrowly to avoid reconsidering this precedent. *See Bond v. United States*, ––– U.S. ––––, 134 S.Ct. 2077, 2085–87, 189 L.Ed.2d 1 (2014). Three Justices would have reached the constitutional question and struck down the statute as exceeding Congress's authority. *See id.* at 2100 (Scalia, J., concurring) ("[T]he possibilities of what the Federal Government may accomplish, with the right treaty in hand, are endless and hardly farfetched."); *id.* at 2109–10 (Thomas, J., concurring) (criticizing *Holland* for taking "an improperly broad view of the Necessary and Proper Clause" in light of "the original understanding [of] the Treaty Power"); *see also United States v. Bollinger*, 798 F.3d 201, 221 (4th Cir. 2015) ("Because Congress may enact legislation regulating domestic affairs pursuant to international treaties, courts should tread carefully in expanding that power." (citing *Bond*, 134 S.Ct. at 2087–88) ); Nicholas Quinn Rosenkranz, *Executing the Treaty Power*, 118 Harv. L. Rev. 1867, 1869 (2005) (arguing that *Holland* allows treaties to "increase the legislative power virtually without limit").

1    Before the district court, he only argued that "the principles of statutory construction require[ ] that the prohibited conduct in § 2423(c) occur soon after the travel." He did not rest his statutory argument on his alleged intent to resettle–a contention that was vigorously disputed by the United States given his written statements to the Cambodian government that he intended to live his life in the United States, a letter to his family that he intended to return to the United States to live, and a letter to his storage facility in Colorado that gave his permanent address as Oxnard, California and stating that he would be traveling in and out of the country. He claimed to have permanently resettled solely in the context of his constitutional challenges to Congressional authority. The district court never resolved the factual question of whether or not Pepe had permanently resettled in Cambodia.

2    I am not necessarily persuaded that there is a meaningful conflict between *Clark* and *Schmidt*. The *Clark* panel was only confronted with the argument that foreign travel—and thus the reach of the statute—terminated on arrival in the foreign country. It did not specifically construe the term "foreign travel" in determining that the statute applied after a citizen's arrival in a foreign country. But that question is, in my mind, irrelevant because the holding is the same in both cases, even if there is some difference in rationale.

3    I see no merit in Pepe's other assertions on appeal, but there is no reason to discuss them given that the majority opinion is confined to a single issue on which it bases the reversal.

**United States v. Pepe, 895 F.3d 679 (2018)**
18 Cal. Daily Op. Serv. 6842, 2018 Daily Journal D.A.R. 6807

**End of Document**
© 2018 Thomson Reuters. No claim to original U.S. Government Works.

 © 2018 Thomson Reuters. No claim to original U.S. Government Works.

| 9th Circuit Case Number(s) | 14-50095 |
| --- | --- |

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  Sep 24, 2018 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)    /s/ Bram M. Alden

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)